MARCUS WITTENBERG ET AL. V. JOHN T. MOLLYNEAUX.

FILED OCTOBER 3, 1900.  No. 11,347.

1. **Contract in Restraint of Trade:** PUBLIC POLICY.  Contracts which impose unreasonable restraints upon the exercise of any business, trade or profession contravene sound public policy.

2. ——: ——: PROTECTION TO PURCHASER.  Partial restraints upon the exercise of any business, trade or profession are not unreasonable when they are ancillary to an actual purchase of property, made in good faith, and are apparently necessary to afford fair protection to the purchaser.

3. ——: ——: MONOPOLY.  But, if it appears that the main purpose of such agreement is to secure a monopoly, and that the purchase of the property is a mere incident or means to that end, it is within the rule applicable to ordinary combinations in restraint of trade and will not be enforced.

4. **Appellate Court:** SUBSEQUENT APPEAL: REVIEW OF FORMER APPEAL.  It is not permissible for an appellate court, on a subsequent appeal of a cause, to reconsider and correct an erroneous decision made by it in the same case on a former appeal.

5. **Res Adjudicata:** OBITER DICTA.  The rulings upon the first appeal settle definitely, for the purposes of the litigation, all questions adjudicated; but mere expressions of opinion respecting matters not actually involved in the decision have no binding force.

6. **Deed:** COVENANT: PUBLIC POLICY.  A covenant in a deed for the exchange of hotel property by which the grantee in one deed agrees that for a period named he will not use the property acquired by him for hotel purposes, is not void as being contrary to public policy.

7. **Franchise:** INNKEEPER: DUTY TO PUBLIC.  The right to run a hotel is not a franchise.  An innkeeper is not clothed with any authority from the state, and he owes no duty to the public

except to render to all who come, and are fit to be received, fair accommodations at fair prices, while he sees fit to continue in business.

8. **Evidence:** ADMITTED FACTS. It is not necessarily prejudicial error to receive evidence to prove admitted facts.

9. **Covenant:** CONDITION: WAIVER: If a party waive a covenant conditionally and the condition is broken, the waiver ceases to be effective for any purpose.

10. **Evidence:** ISSUE: REVERSIBLE ERROR. The reception of evidence which responds to no issue in the case, but which is incapable of mischief, is not reversible error.

11. **Best Evidence.** The best evidence of which a case is in its nature susceptible is always admissible to prove the fact in issue.

12. **Compensatory Damages:** GAINS: LOSSES. A party may recover for gains prevented as well as for losses sustained when such damages are not only certain, but are the natural and probable result of the wrong complained of.

13. **Witness:** DIRECT EXAMINATION: TENDER. A party to avail himself of an error of the court in refusing to permit a witness on direct examination to answer a question, must make a formal offer to prove the fact sought to be elicited.

14. **Evidence:** ERROR. It is not error to refuse to receive evidence of facts admitted by the pleadings.

ERROR to the district court for Clay county. Tried below before STUBBS, J. *Affirmed.*

*G. W. Bemis* and *R. G. Brown,* for plaintiffs in error.

*E. E. Hairgrove* and *Thomas Ryan, contra.*

SULLIVAN, J.

John T. Mollyneaux brought this action in the district court to recover damages of Marcus Wittenberg and his co-defendants for breach of a covenant contained in a deed of conveyance. In June, 1889, the plaintiff was the owner of a hotel in the city of Sutton, and the defendants were at the same time the owners of another hotel in the same city. The parties agreed to exchange their properties, and the agreement was carried into execution. The conveyance made by Mollyneaux to the defendants provided

that the premises therein described should not be used for hotel purposes for a period of two years.  The petition alleges that this stipulation has been violated, and that the plaintiff has been damaged thereby.  Issues were joined by the filing of an answer and reply.  The cause was tried to a jury, and, there having been a verdict and judgment for the plaintiff, the defendants bring the record here for review, alleging error in the admission and exclusion of evidence, and in the giving and refusal of instructions.  Many of the rulings assigned for error assume that the covenant upon which the action is grounded is valid and enforceable.  This position is resolutely assailed by counsel for the defendants.  They contend that there being only two hotels in Sutton, the closing of one would give the owner of the other a monoply, and that such a result would be prejudicial to the interests of the traveling public and contrary to the policy of the state.  We think the restriction upon the use of defendants' property was not unlawful.  Contracts which impose unreasonable restraints upon the exercises of any business, trade or profession are said to contravene sound public policy; but partial restraints are not deemed to be unreasonable when they are ancillary to an actual purchase of property made in good faith, and are apparently necessary to afford fair protection to the purchaser.  Although such agreements tend to suppress competition and bring about conditions favorable to the creation of monopolies, they are in harmony with the policy of the state, which is to promote commerce by facilitating the sale and transfer of property.  Of course if it be shown that the main purpose of the agreement is to secure a monopoly, and that the purchase of the property was a mere incident or means to that end, it is within the rule applicable to ordinary combinations in restraint of trade, and will not be enforced.  *United States v. Addyston Pipe & Steel Co.*, 85 Fed. Rep., 271, 46 L. R. A. 122; *Richardson v. Buhl*, 77 Mich., 632; *People v. Milk Exchange*, 145 N. Y., 267; *State v. Nebraska Distilling Co.*, 29 Nebr., 700; *State*

*v. Standard Oil Co.*, 49 Ohio St., 137; *Distilling & Cattle Feeding Co. v. People*, 156 Ill., 448. The defendants in this case, notwithstanding the contract in question, were at liberty to engage in the hotel business at Sutton; so was any one else who might choose to do so. And the business might be established and carried on anywhere within the corporate limits, except upon the premises formerly owned by Mollyneaux. Under these circumstances, it would seem that the public interests were not formidably threatened by the restrictive covenant, which was doubtless designed to secure to the plaintiff the patronage of his old customers. But the suggestion is made that when the case was first here it was intimated that the facts alleged in the answer would, if proven, constitute a good defense to the action. We are aware of the rule that forbids an appellate court to reconsider and correct, on a subsequent appeal of a cause, an erroneous decision made by it on a former appeal. *Ripp v. Hale*, 45 Nebr., 567; *Coburn v. Watson*, 48 Nebr., 257; *Omaha Life Ass'n v. Kettenbach*, 55 Nebr., 330; *Hayden v. Frederickson*, 59 Nebr., 141; *Leavitt v. Bell*, 59 Nebr., 595. The judgment rendered by this court when the cause was first here is, we concede, a finality; it is the law of the case, an adjudication binding upon the parties, and settling definitely, for the purposes of the litigation, all questions adjudicated. This rule, however, does not apply to a mere expression of opinion in regard to matters not actually involved in the decision. The only point determined in *Mollyneaux v. Wittenberg*, 39 Nebr., 547, touching the agreement of the defendants, was that the district court erred in holding it to be unenforceable. The legal effect of the averments of the answer, except those relating to the waiver, was not considered by the court and was not decided. Upon this branch of the case our conclusion is that the restrictive covenant was valid when made; that events subsequently arising could not, and did not, render it invalid, and that, therefore, the trial court did not err in excluding evidence offered, and instructions re-

quested, on the hypothesis that such covenant was null in its inception, or else became null by reason of the failure of Mollyneaux to furnish fair and reasonable entertainment to all comers. We have not overlooked the contention of counsel that the public has a special interest in hotels; that they are affected with a public use, and that it is contrary to public policy to discontinue the operation of a business of this kind. The first answer to this argument is that the evidence does not show that the Oakland Hotel was in operation when the exchange of properties was effected, and consequently there is no proof that the contract made only one hotel to run where two were running before. The second answer is that the right to run a hotel is not a franchise; an innkeeper is not clothed with any authority from the state, and he owes no duty to the public, except to render to all who come, and are fit to be received, fair accommodations at fair prices, while he sees fit to remain in business. The doctrine established by such cases as *St. Joseph & D. C. R. Co. v. Ryan*, 11 Kan., 602; *Woodman v. Innes*, 47 Kan., 26; *Gibbs v. Consolidated Gas Co.*, 130 U. S., 396; *People v. Chicago Gas Trust Co.*, 130 Ill., 268, and *West. Virginia Transportation Co. v. Ohio River Pipe Line Co.*, 22 W. Va., 600, is not applicable to property adapted to use as a hotel or actually used for that purpose.

It is said that the court erred in permitting Mollyneaux to testify to the fact that the Oakland Hotel, the one which he acquired by the exchange, was incumbered at the time the exchange was made. This evidence was offered for the purpose of showing that there was an adequate consideration for the covenant here in question. Such proof was unnecessary; it was immaterial, but we are not able to see that it was in the least degree prejudicial.

Other assignments of error are grounded upon the theory that the measure of damages is the difference between the loss which would have resulted to the plaintiff from the operation of the Occidental Hotel at one dollar

a day and the loss resulting from its operation at two dollars a day. This view is erroneous. If the right of the defendants under the waiver was lost by failing to comply with its conditions, the plaintiff was entitled to be compensated for any loss of patronage occasioned by the operation of the hotel regardless of the rate charged. The question whether the condition was violated was submitted to the jury under proper instructions, and their decision must, under the evidence in the record, be deemed conclusive.

Exception was taken to the ruling of the court admitting in evidence the deed from Mollyneaux to the defendants. This evidence responded to no issue, but it was obviously incapable of mischief and consequently furnishes no reason for reversing the judgment. The plaintiff undertook to prove his damages by showing loss of patronage resulting from the operation of the hotel conveyed by him to the defendants. The evidence offered for that purpose was the best attainable under the circumstances, and was of the same character as that recognized as competent in *Wittenberg v. Mollyneaux*, 55 Nebr., 429, and *Wittenberg v. Mollyneaux*, 59 Nebr., 203. Feeling entirely satisfied with the views entertained by the court when these decisions were made, we will not enter upon a re-examination of the question at this time. That a party may recover for gains prevented as well as for losses sustained when such damages are not only certain, but are the natural and probable result of the wrong complained of, is a point no longer open to dispute in this state. *Western Union Telegraph Co. v. Wilhelm*, 48 Nebr., 910; *Wittenberg v. Mollyneaux*, 55 Nebr., 429.

It is insisted that the court erred in sustaining objections to questions asked Wittenberg with the view of showing that the Occidental Hotel was run as a dollar a day house. The rulings were quite technical, but they were within the law. We will not give them special consideration, because the defendants having made no offer to prove the facts sought to be elicited, the errors, if any

were committed, are not available. *Nebraska Telephone Co. v. Jones*, 60 Nebr., 396.

The defendants undertook to show that the plaintiff sustained loss of patronage as a result of the drouth of 1890. I. N. Clark was questioned upon this subject, but the court declined to receive his testimony, on the ground that no sufficient foundation had been laid. The rulings were probably not erroneous, but we do not determine the point because, there having been no formal offer to prove the facts sought to be elicited, no advantage can be taken of the alleged errors. These remarks are also applicable to many of the specifications of error based upon the exclusion of evidence of the class to which Mr. Clark's testimony belongs. The testimony of Wittenberg as to the effect of the crop failure of 1890 upon the hotel business in Sutton was stricken out, for the reason that he was not shown to be qualified to testify upon that point. This ruling affords no just ground for complaint, because it does not appear that he knew to what extent the loss of hotel patronage was due to the crop failure. He testified to a general falling off of hotel patronage in 1890, and showed the percentage of loss by comparing the business of 1890 with that of 1889, and that evidence was permitted to go to the jury.

It is claimed that the court erred in refusing to receive proof of the consideration for the waiver referred to in the answer. No proof was necessary. The execution and validity of the waiver were admitted by the reply. The effort of the plaintiff was to show that it ceased to be effective by events occurring after its execution.

There is no prejudicial error in the record, and the judgment is, therefore,

AFFIRMED.