C. W. Swingle & Company, Appellant, v. Earl E. Reynolds, Appellee.

1 N. W. (2d) 307

Filed December 12, 1941.   No. 31045.

*Stewart, Stewart & Whitworth* and *Robins & Yost,* for appellant.

*Cook & Cook* and *Abbott, Dunlap & Abbott, contra.*

Heard before Simmons, C. J., Rose, Eberly, Carter, Messmore and Yeager, JJ., and Ellis, District Judge.

CARTER, J.

This is an action to recover damages for the breach of a contract of sale containing a covenant not to engage in the business of rendering dead animals in the territory south of the Platte river in Nebraska for a period of five years. At the close of plaintiff's evidence the trial court directed a verdict for the defendant.

The plaintiff had for many years been engaged in the business of rendering and processing dead animals in the state of Nebraska in a territory extending from the Missouri river west to Oxford and lying south of the Platte river. Plaintiff's plant was located at Lincoln and was served by company trucks operating in the territory hereinbefore described.

In March, 1937, plaintiff and defendant entered into a written contract whereby plaintiff purchased from the defendant certain real estate and machinery which defendant had acquired while constructing a rendering plant at Fairbury, Nebraska. The contract contains the following paragraph: "As a part of the consideration for the foregoing sale and purchase of the above described property, Reynolds hereby agrees not to engage either directly or indirectly in any manner whatsoever for a period of five years from this date in the rendering business, which is understood to include the collection, transportation, rendering and processing of dead animals, packing house offal and butcher shop offal, in that part of the state of Nebraska which is south of the Platte river."

On October 7, 1937, defendant and C. W. Bruenig commenced the construction of a rendering plant at Wahoo, Nebraska, the plant being located south of the Platte river. Plaintiff alleges that it commenced operation in November or December, 1937, and that defendant was connected with the plant until December 21, 1938. There is evidence in the record that operations commenced on December 2, 1937, and that defendant sold his interest to Bruenig on December 21, 1938.

This action was commenced to recover damages for the

violation of that part of the contract providing that defendant was "not to engage either directly or indirectly in any manner whatsoever for a period of five years from this date in the rendering business, * * * in that part of the state of Nebraska which is south of the Platte river." Defendant for defense contends that the action is based on an unlawful agreement, that the restriction recited in the contract is violative of the anti-trust laws, and of the laws forbidding restraint of trade and monopolies.

The general rule is that the purchase of the property and business of another furnishes a sufficient consideration for an agreement that the latter will not again engage in that business in the same vicinity. Such a contract to be against public policy must have a tendency to militate against the public interest. *Farmers State Bank v. Petersburg State Bank,* 108 Neb. 54, 187 N. W. 117. Partial restraints upon the exercise of any business are not considered unreasonable when they are ancillary to any valid contract made in good faith and are apparently necessary to reasonably protect the parties, or either of them. But if it appears that the main purpose of the transaction is to create a monopoly and the making of the contract is only incidental to the accomplishment of that purpose, the contract will not be enforced. *Wittenberg v. Mollyneaux,* 60 Neb. 583, 83 N. W. 842.

The evidence reveals the fact in the instant case that defendant had not completed his plant at Fairbury, that he did not intend to complete it, that a going business had not been established, and, consequently, defendant had no good-will to sell. The defendant well knew that the restrictive covenant was essential to the consummation of the deal. It is almost intolerable that a person should be permitted to obtain money from another upon solemn agreement not to compete for a reasonable period within a restricted area, and then use the funds thus obtained to do the very thing the contract prohibits. Unless such contract be against the public interest, the parties should be held to their engagements.

It must be admitted by a practical consideration of the subject that any restrictive covenant of this nature does to some extent eliminate competition and tend toward monopoly. Any statement to the contrary simply fails to consider its practical aspects. Also, it may be said that such contracts are generally made for the very purpose of eliminating some competition. To state it otherwise would require us to overlook actualities in modern business methods. We think the plaintiff had a right to purchase defendant's property and business for the very purpose of eliminating him as a competitor, and the contract being in all respects the voluntary act of the parties and free from misrepresentation and fraud, it is binding unless it contravenes the public interest.

The question might well be posed as to how the public interest has been contravened by the making of the contract in question. Defendant promised to refrain from business for a period of five years in the south Platte territory in Nebraska. Certainly, the five-year limitation is not unreasonable, and defendant does not so contend. Is the territorial limitation unreasonable? The evidence discloses that plaintiff's trucks operate at points 160 miles distant from its plant at Lincoln. That it is possible to operate at more distant points cannot be questioned. Other competitors are not prevented from competing with plaintiff in any of the south Platte territory. In fact, other plants are now operating in the restricted area at McCook, Tecumseh and Wahoo. The elimination of one competitor from a restricted area for a limited time in the business field recited in the record does not appear to us to constitute such a restraint of trade or tendency toward monopoly incompatible with the public interest as to warrant one of the parties to avoid his solemn agreement which he made in consideration of a sum of money greatly in excess of value given, if the restrictive covenant be void.

The general rule is that "A restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it * * * is

greater than is required for the protection of the person for whose benefit the restraint is imposed." Restatement, Contracts, sec. 515. The contention is made that the inclusion of the territory south of the Platte river and west of Oxford, Nebraska, makes the restriction unreasonable. The evidence shows that the business of plaintiff did not extend into this area. "Neither the period of time during which a restraint is to last, nor the extent of the territory that is to be included is conclusive but the length of time and even more the extent of space are important factors in the determination of the reasonableness of a restrictive agreement." Restatement, Contracts, sec. 515, Comment c. Ordinarily, the inclusion of the territory west of Oxford within the restricted area would make the territorial scope of the restrictive clause excessive and require a finding that the limitation was unreasonable.

The record shows, however, that the plaintiff company or its stockholders were contemplating the construction of a rendering plant at McCook, Nebraska. In the contract the following provision appears: "In the event a corporation is organized by the Company or its stockholders to operate a rendering plant at McCook, Nebraska, Reynolds shall, upon request, be made the manager of such plant at a good salary plus 10 per cent. of the net profits of the business of such company and Reynolds shall also have the right to purchase from the Company, or its stockholders, one-half of any stock which such Company, or its stockholders, acquire in the new corporation. Reynolds shall give the Company written notice before such plant is ready for operation if he desires to become manager thereof, and if he desires to purchase such stock and such stock shall then be transferred to Reynolds and paid for by him." That the foregoing provision was considered a binding contract of employment is evidenced by defendant's answer in which it is alleged that in April or May, 1937, "and before the rendering plant at McCook, Nebraska, referred to in plaintiff's petition, was ready for operation, defendant orally gave notice to the plaintiff that he desired to exer-

cise the right given him by said contract * * * to become manager of said plant, * * * that plaintiff thereupon accepted said oral notice and promised and informed the defendant that it would take the matter up further with defendant prior to the commencement of operation of said plant at McCook." It is evident therefore that the contract of the parties had a double aspect, one having to do with the sale of the plant at Fairbury, and the other having to do with a contract of employment in a plant to be constructed and operated at McCook, Nebraska.

An authoritative text states the rule applicable to a contract of employment as follows: "The following bargains do not impose unreasonable restraint of trade unless effecting, or forming part of a plan to effect, a monopoly: * * * (f) A bargain by an assistant, servant, or agent not to compete with his employer, or principal, during the term of the employment or agency, or thereafter, within such territory and during such time as may be reasonably necessary for the protection of the employer or principal, without imposing undue hardship on the employee or agent." Restatement, Contracts, sec. 516. We think the contract of employment to be performed at McCook, Nebraska, and recognized by the answer of defendant as a valid contract, constitutes a sufficient consideration for the restrictions imposed in the south Platte territory west of Oxford. The restrictive promise was reasonably limited and therefore enforceable.

We conclude therefore that the contract of sale of the real estate and personal property at Fairbury and the agreement therein contained to employ defendant in the operation of the rendering plant at McCook, Nebraska, are sufficient to sustain the limitations imposed by the contract as to the time and space in which defendant might compete with plaintiff in the rendering and processing of dead animals. The limitations being reasonable under the circumstances, they are not incompatible with the public interest or against public policy.

Damages to plaintiff through loss of profits occasioned

by the competition of the rendering plant promoted and partially financed by defendant and operated by Breunig at Wahoo were definitely shown by evidence as yet uncontradicted. It is argued that plaintiff took away the truck formerly operated at Wahoo in its business before the rendering plant there went into operation, and, consequently, is not entitled to recover damages for the loss of business in that field. At the very least, the question of the voluntary abandonment of the territory is a question for the jury.

We think the evidence required that defendant's motion for a directed verdict be overruled.

REVERSED AND REMANDED.

ELLIS, District Judge, dissenting.

I am unable to agree with the conclusion reached in the opinion adopted by the majority of the court.

I think the plaintiff's evidence establishes two bases requiring condemnation of the restrictive clause, either of which standing alone would be sufficient. First, that the clause is unreasonable and unnecessarily broad in its territorial scope and, second, that it was not actually ancillary to the purchase of property but was in fact the primary purpose—the clause, without which, the contract would not have been entered into.

The plaintiff's second amended petition alleges that plaintiff at all times mentioned was engaged in business *"in that part of the eastern half of the state of Nebraska which is south of the Platte river."* In its reply the plaintiff alleges that at the time the contract was executed the McCook territory was *"not then adequately served* by any rendering establishment." In support of these allegations the plaintiff's president testified as follows: "Q. So prior to 1937 the McCook territory, the South Platte territory west of Oxford was not adequately served by a rendering plant? A. That is right. Q. Were there any other plants in Nebraska doing business out there? A. I don't think so. Q. There wasn't any plant in Nebraska that was in a position to reach that territory? A. Yes."

Plaintiff's evidence also shows that its western-most agencies were at Franklin and Hastings and that its trucks from these points "might go out as far as Oxford." This seems to dispose of the suggestion in the majority opinion that other plants were free to compete in the whole of the restricted territory and especially in view of the fact that at the time the contract was made the *only other plant* south of the Platte was located at Tecumseh.

As indicated in the majority opinion, the defendant had merely begun the construction of a plant in Fairbury. It was not in any degree in operation and necessarily had no established business or value or good-will as a going concern. There is no contention that the prospective territory to be served by this plant was not included and within the territory already being served by the plaintiff. Conceding that a legitimate purpose of such a contract may include the protection of the business enjoyed by the purchaser before the purchase as well as the protection of the business being purchased, mere statement seems to demonstrate the unreasonableness of attempting to include all the territory south of the Platte and west of Oxford—a territory in which the plaintiff was not operating, had no business to protect and, by the plaintiff's own proof, a territory not adequately served by *any* plant.

An examination of our own cases reveals no case in which the court has upheld such contracts except where the facts disclosed a reasonable basis for the scope of the territorial restriction and an apparent necessity to afford fair protection to the purchaser. This is apparent from the pains taken by the court to demonstrate the reasonableness of the territorial restriction in *Tarry v. Johnston,* 114 Neb. 496, 208 N. W. 615. In that case this court said: "The reasonableness of such a restraint is the test of its validity." *Wittenberg v. Mollyneaux,* 60 Neb. 583, 83 N. W. 842: "But partial restraints are not deemed to be unreasonable when they are ancillary to an actual purchase of property made in good faith, and are apparently necessary to afford *fair* protection to the purchaser. (Italics ours.) * * *

Of course, if it be shown that the main purpose of the agreement is to secure a monopoly, and that the purchase of the property was a mere incident or means to that end, it is within the rule applicable to ordinary combinations in restraint of trade, and will not be enforced."

If this contract is to be approved, covering as it does a substantial territory in which the purchaser had no business to protect, it will be rather difficult in the future for the bench and bar to know whether there is a limit and, if so, where and on what basis it is to be determined.

With reference to the purpose or intent of the plaintiff in entering into the contract the plaintiff's president testified as follows: "Q. Mr. Swingle, would you have entered into the agreement Exhibit A if the provision relating to Reynolds reentering business in the territory south of the Platte River in Nebraska had not been in the contract? A. No. Q. Why not? A. Because there would have been no benefit there. It would have been worthless to us." He also testified that the land and improvements thereon at Fairbury were of no use to plaintiff. On cross-examination plaintiff's president testified as follows: "Q. So, Mr. Swingle, the real purpose of entering into this contract was to obtain this provision that Mr. Reynolds would stay out of the South Platte territory for five years. A. It was to get that and to get his services at the McCook plant that we proposed to build." With reference to the latter part of this answer, it is based on the provision in the contract in question which is set forth in the majority opinion. It is quite apparent that this provision did not give the plaintiff any option on defendant's services and was, of course, wholly unenforceable by defendant against some other corporation not a party to the contract. The plaintiff did not build a plant at McCook and neither were the persons who built the plant there all stockholders in the plaintiff corporation. If plaintiff thought that the contract gave it a legal claim to defendant's personal services for a plant at McCook, it increases the difficulty in justifying his exclusion from the territory of the plant he would be in charge of.

'The suggestion by plaintiff's president that the only other purpose (other than to exclude defendant from the whole South Platte territory) of the contract was to get defendant's services is so naive and so utterly without foundation in law or fact as to justify the inference that plaintiff was aware of the glaring need for justification of the actual and unlawful purpose of the restrictive provision. In most of these cases the court is necessarily compelled to rest condemnation on justifiable inferences of unlawful purpose, but here we have an express admission of the purpose which the law condemns.

With reference to the suggestion that no monopoly was created by this contract, it is rarely true that a monopoly is created by one such contract but rather by a series of them successively negotiated. It is the purpose and tendency to create a monopoly which is proscribed. The public policy involved will not be served if condemnation is withheld until the final and consummating contract is submitted. It may be pertinent at this point to note that plaintiff's evidence shows that the *only* other plant located in the south Platte territory was the one located at Tecumseh. In this same connection it may be pointed out that the record shows that the plaintiff was forced by competition during a part of the period since the contract was made to pay the farmers for the carcasses collected. While not of great importance, it gives point to the public policy which condemns such contracts where unreasonable in territorial scope and made with ulterior purpose. It likewise makes clear the value of the protection from competition to be obtained from only a few such contracts.

2 Restatement, Contracts, in covering this topic contains the following:

Section 513. "A bargain is in restraint of trade when its performance would limit competition in any business or restrict a promisor in the exercise of a gainful occupation."

Section 514. "A bargain in restraint of trade is illegal if the restraint is unreasonable."

Section 515. "A restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it

"(a) is greater than is required for the protection of the person for whose benefit the restraint is imposed, or

"(b) imposes undue hardship upon the person restricted, or

"(c) tends to create, or has for its purpose to create, a monopoly, or to control prices or to limit production artificially, or

"(d) unreasonably restricts the alienation or use of anything that is a subject of property, or

"(e) is based on a promise to refrain from competition and is not ancillary either to a contract for the transfer of good-will or other subject of property or to an existing employment or contract of employment.

"Comment: * * *

"c. Neither the period of time during which a restraint is to last, nor the extent of the territory that is to be included is conclusive but the length of time and even more the extent of space are important factors in the determination of the reasonableness of a restrictive agreement. * * *

"Illustrations of Clause (a): * * *

"2. A sells his business to B, and as part of the bargain promises not to engage in a business of the same kind within a hundred miles. The scope of neither A's nor B's business extends so far. The restraint is more extensive than is necessary for B's protection and the promise is illegal. * * *

"Illustrations of Clause (b): * * *

"7. A and B enter into a contract of employment in which B promises not to engage in a similar business anywhere within the State after the termination of the employment. A's business does not extend throughout the State but he hopes

that it may later do so. B's promise to refrain from entering into a similar occupation is illegal."

The Restatement is in accord with all previous holdings of this court and there is therefore no reason why the desirable purpose of the Restatement should not be furthered by keeping the law of the state in accord with it.

I submit that the restrictive clause in issue is within four out of the five separate proscribing tests set forth in the Restatement.

The majority opinion finds that the inclusion of the territory west of Oxford "would make the territorial scope of the restrictive clause excessive and require a finding that the limitation was unreasonable," but that the clearly indicated condemnation of the contract is to be avoided by another provision, viz., the provision relating to defendant's employment by plaintiff. Referring to this provision, as quoted in the majority opinion, it seems apparent that it did not purport to and did not create any enforceable right in the plaintiff. If it had any significance and was legally enforceable under any circumstances, which is at least doubtful, the provision was for the benefit of the defendant alone or, in other words, was part of the consideration flowing to the defendant. There is utterly no basis for any claim that the provision afforded any protection to the plaintiff or its business. This being true, it seems to me that the majority opinion introduces a new and dangerous test to be applied and perhaps superimposed on those heretofore recognized as determining the validity of such contracts. It amounts to a pronouncement by the court that in the future, in passing upon the validity of a restrictive provision, the bench and bar must consider the nature and amount of the consideration moving to the restricted party.

Heretofore it has only been necessary to consider the time and territorial scope of the restriction in the light of the other party's business, its nature and extent. If this test produced a result of unreasonableness, then the contract was unenforceable and the consideration and other pro-

visions of the contract became wholly immaterial.

In the future, in order to make legal a contract otherwise illegal because in unreasonable restraint of trade, it will only be necessary to put into the contract some nebulous provision in favor of the restricted party. Having in mind that we are not here concerned with the promises or obligations of the contracting parties under the ordinary law of contracts but rather with a rule arising out of the public interest and for the public benefit, I consider that the majority opinion can only result in confusion and the ultimate nullification of the rule itself.

As to the holding in the majority opinion that defendant's answer in this action made this contract (which, as indicated above, is found by the majority to be illegal) a legal contract, it contains implications which will be received with profound shock and especially by the bar. It is true that the defendant's answer contains the matter quoted, but the answer also sufficiently pleaded illegality of the contract. As indicated, I think the plaintiff's evidence fully established this latter defense.

Under the prevailing rules of pleading any defendant has a right to plead as many defenses as he may have so long as they are not incompatible in the sense that proof of one necessarily disproves the other. See Comp. St. 1929, sec. 20-812; *Tighe v. Interstate Transit Lines,* 130 Neb. 5, 263 N. W. 483, and cases cited. I think it will be conceded by all that the defense of illegality was a legitimate defense properly asserted and in good faith. Perhaps the judicial history of this case will serve as justification for the defendant's alternative defense. However, he will find little satisfaction in this justification since by pleading his alternative defense he destroyed the one which, except for the other, the majority finds would have been a complete defense. Those members of the bar who are retained to defend will need to look well to the danger of pleading more than one defense.

The appellant's contention that it is inequitable and unconscionable to permit the defendant to retain the bene-

fits of the contract in the face of his breach is not without appeal, but it overlooks the fundamental premise that the condemning rule of law has its source in the public interest and resultant public policy. This rule overrides the contract, the interests and equities of the parties and ought not be parried aside by an incidental, though abhorrent, result which necessarily has been produced in every case where the courts have denied enforcement of such contracts.

The contract in question apportions the total consideration paid by the plaintiff among some eight different items of property acquired from the defendant but does not apportion any part of the consideration to the exclusion clause. Without encumbering the record with the evidence as to the character and value of the property received by the plaintiff, it may be said that the plaintiff received seven acres of land and other property of substantial value to it, so that no unconscionable amount was paid for defendant's promise which disabled him from engaging in business for a substantial period of time and in an unconscionably large territory. The purchaser in this case was not without fault in demanding a restriction wholly unnecessary and unreasonable.

The foregoing indicates the basis of my opinion that the trial court was correct in his appraisal of the facts, justified in his application of the rule, and that the judgment ought not to be reversed.