D. W. TROWBRIDGE FORD, INC., APPELLANT AND CROSS-APPELLEE, V. JAMES W. GALYEN ET AL, APPELLEES AND CROSS-APPELLANTS.

262 N. W. 2d 442

Filed February 15, 1978.  No. 41293.

Edward E. Hannon of Cronin & Hannon, for appellant.

Donald H. Bowman of Peterson, Bowman, Coffman & Larsen, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BOSLAUGH, J.

This case involves a controversy concerning a contract for the sale of an automobile dealership.  On

June 1, 1967, James W. Galyen and Delbert V. Robertson entered into an agreement to sell the corporate stock of the Robertson Motor Co., Inc., of O'Neill, Nebraska, to Douglas W. Trowbridge. Galyen owned over 80 percent of the stock of the Robertson Motor Co. and Robertson owned the balance.

Galyen also owned the Galyen Motor Co., Inc., of Atkinson, Nebraska. Both the Robertson Motor Co., Inc., and the Galyen Motor Co., Inc., were franchised by the Ford Motor Company. The contract provided that Galyen Motor Co., Inc., would immediately cancel its franchise with the Ford Motor Company and hold no other franchise for the sale of new automobiles in Holt County, Nebraska, for a period of 15 years. The contract further provided that Galyen Motor Co., Inc., and Galyen had the right to continue to sell new cars for a period of not to exceed 3 years after July 1, 1967, but all new automobiles and trucks were to be purchased from Trowbridge at net invoice cost plus $25 for pick-up trucks and net invoice cost plus $50 for new automobiles and trucks of F500 rating and larger. At a date not later than July 1, 1970, Galyen and Galyen Motor Co., Inc., were to discontinue the sale and distribution of new automobiles and trucks in Holt County, Nebraska, for a period of 15 years from the date of the contract.

This action was commenced in 1969 by D. W. Trowbridge Ford, Inc., the successor to Robertson Motor Co., Inc., against James W. Galyen and Galyen Motor Co., Inc. The plaintiff alleged that the defendants Galyen and Galyen Motor Co., Inc., had breached the contract by selling new automobiles and trucks which had not been purchased from the plaintiff as required by the contract. The plaintiff prayed for damages and injunctive relief. The petition was amended in 1975 to allege that the defendant had continued to sell new automobiles and trucks after July 1, 1970, in violation of the contract.

The plaintiff prayed for an interpretation of the contract, damages, and injunctive relief. The defendants denied the allegations of the petition, generally, and by cross-petition alleged that Trowbridge had breached the contract for which the defendants were entitled to damages.

The trial court found generally for the plaintiff and that it had been damaged in the amount of $14,814.12. The trial court further found the plaintiff was entitled to injunctive relief to enforce the covenant not to compete, but, because of the probability of further and extensive litigation between the parties and the difficulties of enforcing the covenant, it should be canceled and the plaintiff awarded damages in the amount of $5,000 in lieu of injunctive relief.

Both parties filed motions for new trials. The plaintiff has appealed and the defendants have cross-appealed.

The first issue that must be determined is whether the covenant not to compete was valid and enforceable. The defendants contend that the covenent was invalid because it was not necessary to prevent interference with good will and was not reasonable.

The general rule is that the purchase of business property is a sufficient consideration for a contract by the seller that, for a reasonable time in a limited territory, he will not engage in the buyer's business. Swingle & Co. v. Reynolds, 140 Neb. 693, 1 N. W. 2d 307. See, also, Wittenberg v. Mollyneaux, 60 Neb. 583, 83 N. W. 842. Partial restraints are not unreasonable if they are ancillary to a purchase of property made in good faith and are necessary to afford protection to the purchaser. What is a reasonable restraint depends largely upon the facts of the particular case.

The purchaser in this case was buying an automo-

bile dealership from an established and successful dealer. The restraint was limited to the sale of new cars for a period of 15 years within the county. The seller was given the option to continue the sale of new cars and trucks for the first 3 years of the contract, but was required to buy them from the purchaser.

The object of the restrictive covenant in this case was to protect the purchaser against the competition of Galyen in the new car field in Holt County, Nebraska, for the 15 year period. We think the restriction, which was limited as to both time and space, was reasonable. See, Swingle & Co. v. Reynolds, *supra;* Annotation, 45 A. L. R. 2d 77; Annotation, 46 A. L. R. 2d 119.

The evidence shows that Galyen Motor Co. sold 55 new cars and trucks during the 3 year period after July 1, 1967, which were not purchased from the plaintiff as required by the contract. After July 1, 1970, Galyen continued to sell new cars and trucks, principally, through Galyen Auto Sales, later Galyen Auto Sales, Inc. The evidence shows Galyen Auto Sales was in fact a device employed by Galyen in an effort to avoid the restrictive terms of the contract. Galyen Auto Sales was ostensibly an operation carried on by Richard Galyen, a son of the defendant, James W. Galyen, who was the party to the contract. Richard Galyen had been closely associated with his father in other business operations, and after the litigation commenced, Galyen Auto Sales carried on much of the business that had been conducted previously by Galyen Motor Co. The evidence shows, with reasonable certainty, that Galyen Auto Sales in fact had no substantial existence separate and apart from James W. Galyen and Galyen Motor Co.

The trial court found that the plaintiff had been damaged in the following amounts:

1. $2,050 by the sale of 55 new cars and trucks be-

tween July 1, 1967, and July 1, 1970, by the defendants, James W. Galyen and Galyen Motor Co., Inc., which had not been purchased from the plaintiff as required by the contract.

2. $12,764.12 by the sale or lease of 362 new cars and trucks between July 1, 1970, and March 9, 1976.

The plaintiff contends the damages awarded were inadequate. The defendants contend that the damages are excessive and not sustained by the evidence.

The matter of damages in a case such as this is at best an estimate or approximation. The applicable rule was stated in Gallagher v. Vogel, 157 Neb. 670, 61 N. W. 2d 245, as follows:

"In cases such as the instant case, damages are rarely susceptible of accurate proof; but the measure of damages, expressed generally, is the value of the business lost to the plaintiff — not the gain of defendant, which may be more or less than plaintiff's loss; though such gain may be considered in evidence, it should be shown to correspond in whole or in part with the loss of plaintiff. See, Gregory v. Spieker, 110 Cal. 150, 42 P. 576, 52 Am. S. R. 70.

"While the measure of damages in an action for the breach of an agreement by the seller not to reenter business in competition with the buyer is usually difficult of exact computation, he who is damaged will not be precluded from recovering because of that fact. But the plaintiff will be called upon, in order to recover substantial damages, to furnish sufficient data to enable the court, with a reasonable degree of certainty and exactness, to estimate the actual damages, and if he fails to do this he can recover only a nominal sum. See, Scotton v. Wright, 32 Del. 192, 121 A. 180; Salinger v. Salinger, 69 N. H. 589, 45 A. 558.

"The most that can be done is to adduce the pertinent facts and submit them to the trial court to estimate and determine the sum which will afford the

injured party reasonable compensation. See Galucha v. Naso, 147 Iowa 309, 126 N. W. 146.

"Speaking broadly, the amount recoverable for breach of an agreement by the seller of a business not to engage in competition with the buyer is the loss which the latter has sustained, naturally resulting from the breach.

"The general rule is that the party injured by a breach of contract is entitled to recover all of his damages, including gains prevented, as well as losses sustained, provided they are certain and such as might naturally be expected to follow the breach. See Western Union Tel. Co. v. Wilhelm, 48 Neb. 910, 67 N. W. 870."

Involved in the question of damages in this case is the meaning of the term "new" automobiles and trucks as used in the contract. The trial court held that a "new" unit was one sold under a manufacturer's statement of origin with a new car or truck warranty and less than 100 miles use. Since many new units were obtained from other dealers and then driven to the point of delivery, a 100 mile limit would seem too restrictive. A more reasonable figure would be 500 miles since this would allow for units obtained from dealers located more than 100 miles from Atkinson, Nebraska. Units which were titled only for the purpose of crediting another Ford dealer with the sale were treated as "new" units.

"Demonstrators" and "Executive Cars" with less than 6,000 miles use can be sold with a new car warranty. However, the contract contained a specific provision allowing Galyen to bid directly for "executive cars." Consequenty, these units were not "new" units within the meaning of the contract. With the minor exceptions noted we think the definition adopted by the trial court was generally correct.

Also involved in the matter of damages is the allocation of the item of "dealer hold back" for each

new unit sold. The invoice for each new unit sold by the Ford Motor Company includes an item known as the "dealer hold back" which is a part of the total charge made to the dealer for the unit. This amount, which is approximately 2 percent of the cost of the unit, is paid to the dealer by the manufacturer at a later time. The defendant claims that this item should be excluded in computing "net invoice cost."

The trial court found that the plaintiff was entitled to retain the "dealer hold back." The evidence indicates that the dispute about this item arose after the litigation had been commenced and that the hold back was treated as a part of the cost of new units purchased by the defendants from dealers other than the plaintiff. We think the evidence sustains the finding that the plaintiff was entitled to retain the "dealer hold back" on new units purchased by the defendants.

The trial court did not include the "dealer hold back" as an item of damage for the 55 new units that were sold by the defendants between July 1, 1967, and July 1, 1970. The evidence indicates that the "dealer hold back" on these units would amount to approximately $3,000. We find that this is a proper item of damages and that plaintiff should be awarded this amount in addition to the $2,050 awarded by the trial court for the period between July 1, 1967, and July 1, 1970.

In addition to the sale of new cars the defendant Galyen also operated a leasing business. The trial court included 71 leased "new" units in the computation of the 362 units for which damages were awarded between July 1, 1970, and March 9, 1976. The contract was very specific and prohibited only the sale and distribution of new units. Although leasing is a related activity carried on by many new car dealers, there are other related activities such as the sale of used cars and servicing which were not prohibited

by the contract. We interpret the contract as not prohibiting the defendants from leasing cars and trucks. When the 71 leased units are eliminated, the new units sold by the defendants between July 1, 1970, and March 9, 1976, total 291.

In awarding damages for new units sold by the defendants after July 1, 1970, the trial court determined that the plaintiff could have been expected to sell 50 percent of the units which the defendants sold in violation of the contract. We believe this was a realistic view of the situation and took into account the fact the plaintiff was a new dealer and there were other dealers operating in Holt County and surrounding counties.

The trial court awarded damages on a per unit basis by computing the average net profit per new unit sold from the financial statements and reports of the plaintiff which were in evidence. The trial court arrived at an average profit of $70.53 per unit sold. This figure appears to be reasonably accurate as a matter of computation. The plaintiff contends it is erroneous because it does not recognize the probability that overhead expense would not increase proportionately as the volume of new car business of the plaintiff would increase.

In the final analysis, the determination of damages in this type of a case is at best an estimate or approximation. Gallagher v. Vogel, *supra.* There is no way to prove how many more new units the plaintiff would have sold if Galyen had not continued to sell new units after July 1, 1970. There is no way to know what additional expenses would have been incurred because of the increased volume. Additional volume of trade does not always result in increased profits. On the basis of the entire record we believe the figure adopted by the trial court was a reasonable method to use in determining the damages.

When the 71 leased units are eliminated from the

computation, the plaintiff's damages amount to $10,360.66 for new units sold by Galyen after July 1, 1970.

The remaining issue concerns the trial court's denial of injunctive relief to enforce the restrictive covenant during the remaining years of the contract. The trial court found that the plaintiff had established a right to injunctive relief, but "the course of conduct of the defendants toward the plaintiff indicates that further and extensive litigation may result from leaving said covenant not to compete in effect and the court finds that payment of just compensation by defendants to plaintiff for the cancellation of said covenent not to compete effective March 10, 1976, would be in the interest of justice and equity between the parties, and the court does determine that just compensation therefor is in the amount of $5,000.00."

Specific enforcement of a contract may be refused if the performance is of such a character as to make effective enforcement unreasonably difficult or to unnecessarily require long-continued supervision by the court. Restatement of Contracts, § 371, p. 675. See, also, Gloe v. Chicago, R. I. & P. R. Co., 65 Neb. 680, 91 N. W. 547. Where specific enforcement of a contract is denied, the court may award damages in the same proceeding. See Restatement of Contracts, § 363, p. 657. See, also, 42 Am. Jur. 2d, Injunctions, § 306, p. 1106; 43 C. J. S., Injunctions, § 217, p. 951; 81A C. J. S., Specific Performance, § 202, p. 177; Weaver v. Snively, 73 Neb. 35, 102 N. W. 77; Robinette v. Olsen, 114 Neb. 728, 209 N. W. 614.

At the time this case was tried approximately 9 years of the contract had expired. The record demonstrates the probable difficulties which would be involved in effective enforcement of the contract during the next 6 years and the probability that there would be further and extensive litigation between the parties in the event the covenant was to

remain in effect. We think it was within the discretion of the trial court to cancel the covenant, effective March 10, 1976, and award damages in lieu of an injunction.

In determining the damages to be awarded, some consideration should be given to the experience of the plaintiff during the first 9 years of the contract. Also to be considered is the fact that the damages awarded are certain, they are awarded at this time, and the expense and uncertainty of future litigation is avoided. Upon a consideration of all of the facts and circumstances, we find the amount awarded by the trial court for the cancellation of the covenant was proper.

In the cross-petition the defendants alleged that the plaintiff breached the contract by refusing to deliver units on request, which were in stock at the plaintiff's garage, and by claiming that a deal was pending on the units in question. There is no evidence that the plaintiff ever refused to order a unit requested by the defendant during the 3 year period following the date of the contract.

A permissible inference from the evidence is that, in each instance in question, a customer had contacted both dealers separately about a possible purchase. The evidence concerning these matters was in conflict and we consider the fact that the trial court heard and observed the witnesses and resolved the issue against the defendants. We find the defendants are not entitled to recover damages on the cross-petition.

The judgment of the District Court should be modified to provide that the plaintiff should recover the sum of $15,410.66 for damages to March 9, 1976. The judgment as modified is affirmed.

AFFIRMED AS MODIFIED.