QUAD-STATES, INC., A NEBRASKA CORPORATION, APPELLEE, V.
GILBERT VANDE MHEEN, APPELLANT.
368 N.W.2d 795

Filed June 7, 1985.   No. 84-165.

David L. Updegraff of Qualley & Larson, for appellant.

Sam S. Killinger and Michael W. Ellwanger of Kindig,
Beebe, Rawlings, Nieland & Killinger, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE,
SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Appellee, Quad-States, Inc., sued appellant, Gilbert Vande
Mheen, for damages resulting from Vande Mheen's breach of a

covenant not to compete executed in connection with the sale of Vande Mheen's business to Quad-States. Judgment was entered on the verdict of $615,833.51 in favor of Quad-States. Among Vande Mheen's assignments of error in this appeal is the trial court's failure to sustain his motion for a directed verdict, made at the close of all the evidence, on the basis that Quad-States failed to prove its damages with the requisite degree of certainty. We reverse and remand with the direction that the cause be dismissed.

We observe that on a motion for a directed verdict, the moving party is deemed to have admitted as true all the material and relevant evidence admitted which is favorable to the party against whom the motion is directed, and the party against whom the motion is directed is entitled to the benefit of all proper inferences which can reasonably be deduced therefrom. *Maloney v. Kaminski, ante* p. 55, 368 N.W.2d 447 (1985). However, where the evidence is insufficient to sustain a verdict in favor of the plaintiff, it is the duty of the trial court, on the motion of the defendant, to dismiss the action. *Sinnett v. Dial Constr. Co.*, 187 Neb. 190, 188 N.W.2d 681 (1971).

As a general rule, one injured by a breach of contract is entitled to recover all of his damages, including the gains prevented as well as losses sustained, provided they are reasonably certain and such as might naturally be expected to follow the breach. Broadly speaking, the amount recoverable for the breach of a covenant not to compete is the loss sustained by the covenantee as a natural result of the breach. It must also be borne in mind that the measure of damages in an action for the breach of a covenant not to compete is usually difficult of exact computation and in the final analysis is an estimate or approximation. The fact that the damages are not susceptible of exact computation will not preclude recovery, but in order to recover substantial damages, a plaintiff is called upon to furnish sufficient data to enable the trier of fact to estimate the actual damages with a reasonable degree of certainty and exactness. If a plaintiff fails to so do, he can recover only a nominal sum. Even to recover a nominal sum, there must be evidence of a specific monetary loss. *Dana F. Cole & Co. v. Byerly*, 211 Neb. 903, 320 N.W.2d 916 (1982); *D. W.*

*Trowbridge Ford, Inc. v. Galyen*, 200 Neb. 103, 262 N.W.2d 442 (1978); *Midlands Transp. Co. v. Apple Lines, Inc.*, 188 Neb. 435, 197 N.W.2d 646 (1972); *Gallagher v. Vogel*, 157 Neb. 670, 61 N.W.2d 245 (1953).

Vande Mheen had done business at South Sioux City, Nebraska, through Van's Used Trucks & Parts, Inc., for a number of years. The venture consisted of the buying and selling at a profit used trucks, parts, and scrap. On October 1, 1979, Vande Mheen sold the business to Quad-States. As a part of that transaction, Vande Mheen agreed personally, in relevant part, that for a period of 5 years he would not compete with Quad-States for business "falling within a 100 mile radius of South Sioux City, Nebraska."

The evidence is such that the jury could find that Vande Mheen breached the covenant, at least until the last few months of the relevant period, when he moved to O'Neill, Nebraska, a town more than 100 miles from South Sioux City.

In order to prove its damages, Quad-States adduced evidence as to all the purchases of trucks, parts, and scrap made by Vande Mheen during the prohibited period. It then declared through one of its officers that Quad-States would have made 90 percent of those purchases had Vande Mheen not done so. However, no records were introduced to show how much Quad-States had purchased from any source after it first acquired the business. Neither was there any evidence adduced as to the percentage of the trucks, parts, or scrap available in the restricted area actually purchased by Quad-States. There is, however, uncontradicted evidence from a Quad-States employee, who had also worked for Vande Mheen, that Quad-States was not making many purchases from any source. The evidence is that Quad-States did very little traveling in search of available items and that few sellers of scrap called on Quad-States because of the reduced-level buying. Quad-States' accountant nonetheless cast a formula which in essence applied Quad-States' profit margin to the purchases made by Vande Mheen, adjusted for the additional costs it could be assumed Quad-States would have incurred in doing the additional business, and extrapolated therefrom Quad-States' lost profits or damages. The accountant's reckoning converted

Quad-States' actual loss of $141,062 for the period in question into a projected profit of $2,436,111.

In order to determine whether that evidence is sufficient to support an award of damages, we must analyze factual situations in which the damage rules cited above have been applied.

In *D. W. Trowbridge Ford, Inc. v. Galyen, supra*, the plaintiff purchased the defendant's automobile dealership in O'Neill in 1967. The contract provided, among other things, that the defendant would stop selling new vehicles after a certain date. The evidence with respect to that breach established that the defendant sold 291 new automobiles. Taking into account the newness of plaintiff's venture and the existence of other competition, the trial court concluded that the plaintiff would have sold half of the units that the defendant sold during the prohibited period. The court then awarded damages for that breach on a per automobile basis, using the plaintiff's financial records to compute an average net profit per automobile. This court found the method of computing plaintiff's loss reasonable and the evidence sufficient, on a de novo review as the action was one for injunction, to support an award of damages.

*Midlands Transp. Co. v. Apple Lines, Inc., supra*, presented an issue as to whether sufficient evidence existed to allow the jury to consider the question of damages. The seller had agreed not to transport any commodity in the restricted area for a period of 5 years, but apparently did so nonetheless. There was evidence that the buyer lost a customer to the seller. Without producing any books or records, which had been destroyed in a fire, the buyer's general manager testified that the loss of this customer reduced the buyer's gross income by a stated amount. This same witness testified that the buyer made a profit from its operation, but because of the loss of the records could not state the amount or extent thereof. This court held that the lack of evidence as to the amount of profit lost as a result of the loss of the customer rendered it impossible for a jury to estimate the buyer's damage with the requisite degree of certitude and exactness. Thus, the issue of damages could not be submitted to the jury. In so holding, this court stated:

It is the duty of the district court to refrain from submitting to a jury the issue of damages when the evidence is such that it cannot determine such issue except by indulging in speculation and conjecture. [Citation omitted.] To submit the issue of damages in this case to the jury would be to "leave the jury to rove without guide or compass through the limitless fields of conjecture and speculation." [Citation omitted.]

*Id.* at 440, 197 N.W.2d at 649.

The plaintiff in *Gallagher v. Vogel*, 157 Neb. 670, 61 N.W.2d 245 (1953), sued to enjoin future breaches of a covenant not to compete and for damages resulting from past breaches. The records of plaintiff's purchases and sales were put into evidence. Therefrom, a comparison was made of the business done by plaintiff, during the period defendant competed, to the business plaintiff did during the period no such competition existed. From that comparison the plaintiff estimated the amount of his monthly loss during the period of the breach. This court, again on a de novo review, found such evidence and computations sufficient to support an award of damages.

The foregoing cases teach that in a suit for the breach of a covenant not to compete, a claim for lost profits must be supported by some financial data which permit an estimate of the actual loss to be made with reasonable certitude and exactness.

The data in *D. W. Trowbridge Ford, Inc. v. Galyen*, 200 Neb. 103, 262 N.W.2d 442 (1978), consisted of the actual number of vehicles proved to have been sold by defendant in violation of the covenant and the records of plaintiff's operation. This data enabled an estimate of the lost profit on each such automobile to be computed with reasonable certainty. With that information the amount of plaintiff's loss could be ascertained with reasonable exactness. In *Gallagher v. Vogel, supra*, the records of the buyer's operation enabled the effect of the breach to be measured by a comparison of the business done by the plaintiff with and without defendant's competition.

Unlike the situation in those two cases and like the situation in *Midlands Transp. Co. v. Apple Lines, Inc.*, 188 Neb. 435, 197 N.W.2d 646 (1972), the present case contains no data which

in any way support Quad-States' declaration that it would have purchased 90 percent of what Vande Mheen bought. Without some financial records tending to support that underlying assumption, Quad-States' formula for estimating its lost profits fails. It is beyond question that Quad-States has the burden of proving its own loss, not any gain which may have been made by Vande Mheen. *D. W. Trowbridge Ford, Inc. v. Galyen, supra; Gallagher v. Vogel, supra.* We recognize that if Vande Mheen competed throughout the existence of Quad-States, the latter cannot be expected to produce records of its profits before and after the breach, as was done in *Gallagher.* However, evidence of the volume of purchases actually made by Quad-States is indispensable to establish its premise that it would have purchased 90 percent of the items purchased by Vande Mheen. The record in the present case is such that the jury could only engage in speculation and conjecture as to Quad-States' loss; speculation and conjecture will not support an award of damages.

Indeed, the record will not even support the award of nominal damages. In *Dana F. Cole & Co. v. Byerly*, 211 Neb. 903, 320 N.W.2d 916 (1982), we held evidence that the covenantor had accepted some of the covenantee's accounting clients without a showing of an actual monetary loss therefrom would not support an award of nominal damages. As in *Cole*, there is in the present case no competent evidence of any specific monetary loss.

Accordingly, the judgment of the trial court is reversed and the cause remanded with the direction that it be dismissed.

REVERSED AND REMANDED WITH
THE DIRECTION TO DISMISS.

WHITE, J., participating on briefs.

GRANT, J., dissenting.

I respectfully dissent. I agree with the court's statement that "[t]he evidence is such that the jury could find that Vande Mheen breached the covenant, at least until the last few months of the relevant period," in that the evidence shows a flagrant and continuous violation of the covenant not to compete throughout the entire applicable period from the date of the signing of the contract up to the date of the filing of the petition

herein.

As I view the record, the evidence shows that the fact of damage has been proven beyond doubt and that sufficient evidence was adduced by Quad-States to prove the amount of those damages to a degree sufficient to support the jury's verdict. I agree fully with the statement in the majority opinion that the measure of damages in an action for the breach of a covenant not to compete is usually difficult of exact computation and in the final analysis is an estimate or approximation. As an example of the problems facing a plaintiff in this type of case, Quad-States did not have available the approach approved by this court in *Gallagher v. Vogel*, 157 Neb. 670, 61 N.W.2d 245 (1953). In the *Gallagher* case the plaintiff was able to adduce evidence of business operations during the time that no improper competition existed and during the time the defendant was improperly competing. In this case Quad-States could not introduce evidence of such a comparison because defendant competed improperly throughout the entire period.

I believe the jury could calculate Quad-States' damages, however, without indulging in the "speculation and conjecture" condemned in *Midlands Transp. Co. v. Apple Lines, Inc.*, 188 Neb. 435, 197 N.W.2d 646 (1972). Quad-States produced evidence of specific instances where defendant had breached his contract with Quad-States by directly competing, and adduced testimony that Quad-States would have purchased 90 percent of the items that defendant had prevented Quad-States from purchasing and that such purchases would have resulted in a certain percentage of profit. This approach is not unlike the method approved in *D. W. Trowbridge Ford, Inc. v. Galyen*, 200 Neb. 103, 262 N.W.2d 442 (1978). Quad-States' figures and theories were supported by expert testimony, and the jurors were properly instructed that they could believe such testimony or not, according to their own best judgment. The jury obviously chose to believe Quad-States' evidence. If the jury believed such evidence, the jury had a basis to calculate damages.

The majority opinion relies, in part, on evidence adduced which showed, as stated in the majority opinion, that

Quad-States "did very little traveling in search of available items" and that Quad-States "was not making many purchases from any source." The latter testimony came from one of plaintiff's employees who formerly had been an employee of defendant. The jury could properly choose not to believe such evidence or could have concluded that defendant had so acted as to make such activities on the part of Quad-States futile.

I would affirm the jury verdict.