McDonald's Corporation, a Delaware
corporation, appellant, v.
Markim, Inc., a Nebraska corporation, appellee.
McDonald's Corporation, a Delaware
corporation, appellant, v.
Roseli, Inc., a Nebraska corporation, appellee.

306 N.W.2d 158

Filed May 29, 1981. No. 43287.

Maureen E. McGrath of Kutak, Rock & Huie and Burton Cohen and Ira Feldman for appellant.

Frederick S. Cassman of Abrahams, Kaslow & Cassman for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

McDonald's Corporation filed these actions, which have been consolidated on appeal, seeking a declaratory judgment by the District Court for Douglas County of its obligations under franchise agreements with Markim, Inc., and Roseli, Inc. McDonald's also sought an injunction barring Markim and Roseli from using its trademarks, trade names, and service marks after the expiration date of their agreements. Markim and Roseli counterclaimed, alleging that McDonald's had acted in bad faith and had violated the Nebraska Franchise Practices Act by failing to renew their expiring franchises without good cause. The trial court determined that the Nebraska Franchise Practices Act was inapplicable retroactively; however, it did find that McDonald's had acted in bad faith, and therefore entered a mandatory injunction requiring McDonald's to extend each of the expiring franchise agreements for a period of 5 years.

McDonald's appealed from the adverse rulings and assigned the following as error: (1) The court erred in finding that McDonald's acted wrongfully in exercising its discretion and acted in bad faith; (2) The court erred in holding that McDonald's did not fulfill its obligation to give appellees "first consideration" to an "additional franchise period" when it decided

that it did not want to have any further franchise relation with them; and (3) The court erred in not enjoining appellees from using McDonald's trademarks, trade names, and service marks after the agreed expiration dates of their franchises. We reverse.

Markim and Roseli are corporations whose principal business is the operation of McDonald's restaurants as franchisees in the national system of fast-food hamburger restaurants. Some background is necessary to understand the ownership of the franchise rights. During the period from 1959 to 1964, when McDonald's was still in its infant stages, Bernard Copeland and John Skoog acquired a total of six McDonald's franchises in the Omaha-Council Bluffs area. In each instance, McDonald's granted a franchise and entered into a sublease of the premises for a term of 20 years. The first franchise was entered into in 1959 for the location at 8022 West Dodge Road, and the second franchise was entered into in 1961 for the location at 4802 Ames Street. Late in 1964, Eli I. Schupack and Julian J. Wineberg, who were partners in a Chicago accounting firm, on behalf of themselves and other investors, purchased the six franchises from Copeland and Skoog. McDonald's consented to the assignment of the franchises and subleases upon the express condition that Schupack and Wineberg continue to retain ownership of 51 percent of the stock of the corporations holding the franchises, and that one of the men move to Omaha and devote substantially all of his time to the active management of the six McDonald's restaurants. Eli Schupack moved to Omaha and has managed the six restaurants since the acquisition. The investors acquired a seventh restaurant in 1971 with a 20-year franchise term, which Schupack also manages.

Each restaurant is owned by a different corporation of which Schupack and Wineberg own 51 percent. The appellee Markim, Inc., is the owner of the Dodge Street

restaurant, and appellee Roseli, Inc., owns the Ames Street restaurant. The original 20-year term of the Dodge Street franchise expired on February 8, 1980, and the Ames Street franchise is to expire on December 12, 1981. Pursuant to company policy to meet in the 17th year of a 20-year franchise to determine whether the franchisee will have his franchise renewed, the McDonald's rewrite committee met on August 23, 1977, to discuss the Ames Street and Dodge Street restaurants. At the conclusion of the discussion, the committee voted unanimously not to grant any additional franchise periods to appellees after the current franchise periods expire. Markim and Roseli were notified of this action by letters dated March 6, 1978, and May 8, 1979, respectively.

Subsequent to notification of the denial of the franchise renewal, it appears that appellees contended that their agreements contained a renewal option. That claim was later dropped. However, McDonald's commenced these actions, seeking a declaratory judgment that it had fully complied with its franchise agreement to give appellees first consideration for renewal and that it was not obligated to offer appellees an additional franchise period. The clause in the franchise agreement which is in issue stated:

"20. This agreement and said franchise and license granted hereunder, unless theretofore terminated, shall be and remain in full force and effect for a period of twenty (20) years from and after the first day of the month following the month during which the said establishment shall have been constructed and equipped as hereinbefore provided. *If at the end of the franchise term of twenty years the premises are available and Licensee is determined in good standing by Licensor, Licensee will be given first consideration for an additional franchise period of five years*, consistent with Licensor's rights and interests in the property." (Emphasis supplied.)

Prior to trial, McDonald's filed a motion for partial

summary judgment which the trial court sustained, and from which no appeal has been taken. In that motion McDonald's asked the court to decide the issues of (a) the meaning of paragraph 20 and the nature of the rights and obligations it created, and (b) the applicability of the Nebraska Franchise Practices Act, Neb. Rev. Stat. §§ 87-401 et seq. (Cum. Supp. 1980), effective July 22, 1978. The court held that there were no genuine issues of material fact involved in those two issues, and that McDonald's was entitled to judgment as a matter of law. The court found that the Nebraska Franchise Practices Act was not intended to apply retroactively and therefore the statutes were not applicable to the franchises involved in this lawsuit, and that McDonald's was not subject to nor in violation of the act. The court further found that the "first consideration" clause of paragraph 20 is clear and unambiguous and does not grant an option to the defendants for an extended 5-year term, nor does it obligate McDonald's to extend the franchise for an additional 5 years. However, according to the trial court's orders, the clause does require McDonald's to review and reflect upon the facts concerning the defendants' qualifications and capabilities as franchisees before considering anyone else for the franchise at the particular locations. The clause did not, in the trial court's opinion, impose any obligation on McDonald's to exercise its discretion in favor of extending defendants' franchises even if the relevant facts disclose that defendants are qualified for an additional 5-year term. In other words, once McDonald's complied with the obligation to give first consideration to the defendants, McDonald's could consider anyone else for the subsequent franchise should McDonald's desire to continue doing business at those locations. Such findings appear in the court's two orders, and are conclusive as to the parties.

After the case was tried to the court, it entered a decree reaffirming and incorporating its partial sum-

mary judgment findings and conclusions. The decree stated: "22. The Court finds that McDonald's, in each instance, failed to give Markim or Roseli 'first consideration' within the meaning of Paragraph 20, since 'first consideration' implies that such consideration will be given in a reasonable manner and based upon good faith and the requirements of reasonableness and good faith consideration were not afforded by McDonald's to the defendants." The court found that evidence establishing lack of good faith was based in part on litigation pending between McDonald's and defendants which was on appeal to this court from an adverse decision, and from which management must have harbored some resentment and dissatisfaction with Eli Schupack for the filing of the suit (see *Schupack v. McDonald's System, Inc.*, 200 Neb. 485, 264 N.W.2d 827 (1978)); emphasis that was placed on Schupack's failure to donate to a voluntary advertising fund; letters of refusal to renew that were sent at unreasonable and unconscionable lengths of time subsequent to the decision of the committee; the management of McDonald's that misled defendants by encouraging franchisees to speak up with regard to complaints and assured them that no recrimination would result; and the overall testimony of management that was based on subjective reasoning on the part of witnesses for McDonald's with little or no justification for the conclusions reached by those witnesses that the disharmony between Schupack and McDonald's was caused solely by Schupack's actions.

The court then ordered that each of the franchises be extended an additional 5 years under the terms of the original franchise agreement. On appeal, McDonald's assigns as error that the trial court erred in finding, as a matter of fact, that McDonald's acted in bad faith. Appellant argues that the court erroneously equated "good faith" with "good cause," and thereafter applied an improper standard of good faith. The question on appeal is what the proper standard

is and whether McDonald's applied that standard when it refused to renew the franchises. This being an equity action, our review is de novo. *Botsch v. Leigh Land Co.*, 205 Neb. 401, 288 N.W.2d 31 (1980).

The position taken by appellees is that the Nebraska Franchise Practices Act is not applicable, but it did establish the public policy of the state, and therefore this court should, as a matter of common law, require a showing of good cause before a franchise can be terminated or not renewed. To adopt such a position would in substance retrospectively apply the act, and we decline to do so. An indication of what is the common law relating to franchisors and franchisees can be gleaned from *United States Brewers' Assn., Inc. v. State*, 192 Neb. 328, 220 N.W.2d 544 (1974). In that case, actions were brought to determine the constitutionality of Neb. Laws 1971, L.B. 234, as amended by Neb. Laws 1972, L.B. 66. L.B. 234 related to the distribution of beer in the state, and L.B. 66 related to the distribution of alcoholic liquors in the state. The laws protected distributors against termination of their franchises without a showing by the manufacturer of good cause, and specified what shall not constitute good cause, as well as what shall be considered in determining whether good cause exists. This court determined that the act was an unreasonable invasion of the personal and property rights of the plaintiffs, and declared the laws unconstitutional.

"Prior to the enactment of L.B. 234 and L.B. 66, the manufacturers of beer and alcoholic liquors were free to enter into contracts with distributors concerning the distribution of their products as they saw fit. The plaintiffs had the same rights in this regard as the manufacturers of other products. See Barish v. Chrysler Corp., 141 Neb. 157, 3 N.W.2d 91." *United States Brewers' Assn.* at 330, 220 N.W.2d at 546.

*Barish v. Chrysler Corporation*, 141 Neb. 157, 3 N.W.2d 91 (1942), was an action to recover damages under the Junkin Act for injuries to business and

property which arose from termination of franchise contracts by defendants Chrysler Corporation and Dodge Brothers. The contracts contained express terms for termination. The syllabus to that case states: "Any person may do business with whomsoever he desires. Also, he may refuse business relations with any person whomsoever, whether the refusal is based on reason, whim or prejudice. And where, by the terms of a contract, it is specified that either party may terminate the agreement at any time, such termination may likewise be had as stipulated and upon the conditions in such contract contained." This appears to be a statement of the common law of Nebraska relating to franchise agreements prior to the enactment of the Nebraska Franchise Practices Act.

The only requirement of McDonald's was that it give the licensee "first consideration for an additional franchise period of five years." Strangely enough, there is a paucity of case law construing the term "first consideration." As a matter of fact, the only case found remotely bearing on this subject is one relating to a labor bargaining agreement. In *Utility Co-Workers Association v. Public Service Electric and Gas Company*, 344 F.2d 102 (3d Cir. 1965), the bargaining agreement between the parties provided that "'[w]hen a vacancy occurs . . . the Company agrees that it will extend to other stenographic employees in the Commercial Office first consideration for promotion to the secretarial position.'" In syllabus 1 of that opinion, it is stated in part that "'first consideration' for promotion to the secretarial position did not mean that employer was bound to give commercial office employee 'thoughtful or sympathetic regard' in preference to anyone else, and hence employer which examined commercial office employee's qualifications first properly selected another applicant to fill vacancy in office of confidential secretary." And from the body of the opinion: "What

the company was bound to do under Section 5 was to examine the Commercial Office employee's qualifications first, which it admittedly did." *Id.* at 103.

In the final analysis, the obligation to give a licensee "first consideration for an additional franchise period" places no burden of any significance upon McDonald's. The actions of McDonald's should be reviewed not in terms of whether it had good cause to refuse the franchise, but whether it complied with the contract provision dealing with termination and renewal.

The rule in this state is where a contract states that the opinion or decision of a designated person is to be conclusive, then all that is required is that the judgment be actually and honestly exercised. *Thurman v. City of Omaha*, 64 Neb. 490, 90 N.W. 253 (1902). Such a decision must be made with entire good faith and not captiously or capriciously. *Melson v. Turner*, 125 Neb. 603, 251 N.W. 172 (1933). The question then is whether McDonald's exercised its judgment actually and honestly when it gave the appellees "first consideration" as defined by the partial summary judgment order.

After a review of the record, we disagree with the trial court's conclusion that McDonald's acted in bad faith. McDonald's only obligation under the "first consideration" clause was to consider Markim and Roseli for a furtherance of its franchise relationship prior to considering any other prospective franchisee for those locations. It had a duty to carry out this obligation in good faith, defined as honestly and actually, and not captiously or capriciously. McDonald's carried out this obligation when it met to determine whether or not it wished to continue a franchise relationship with Markim and Roseli at their respective locations. The meeting involved the joint discussion and consideration of eight of the top management personnel of McDonald's. They met for over 2 hours and discussed all aspects of the past relationship with Mr. Schupack and his corporations and the

prospects for improving relations in the future. They discussed such things as pending litigation; non-cooperation; outspoken criticism of McDonald's by the franchisee; failure to adhere to company policies and training procedures; vacillating ratings in the area of quality, service, and cleanliness inspections from year to year; and apparent resistance to attitude changes. It is not dishonest or capricious to take such factors into consideration in determining whether or not the company wished to continue a business relationship with a particular franchisee. Whether the committee's conclusions were all fully supported by the record is not necessarily determinative. The important consideration is that from an examination of all the evidence which they had, the committee members unanimously came to the conclusion that such a situation did in fact exist and, as such, a continuation of the relationship was intolerable. These factors and that conclusion may or may not constitute good cause to terminate a franchise, but by the same token they are not evidence of dishonesty and capriciousness in refusing to extend a franchise period.

The order of the District Court is reversed, and the cause is remanded for the issuance of an injunction barring the defendants from using McDonald's trademarks, trade names, and service marks after the expiration date of their franchise agreements, and for further action consistent with this opinion.

REVERSED AND REMANDED.

CLINTON, J., participating on briefs.

KRIVOSHA, C.J., dissenting.

I must respectfully dissent from the majority in this case. The majority has concluded that the requirement of paragraph 20 of the agreement that McDonald's will give first consideration for an additional franchise merely requires McDonald's to, in good faith, mull the matter over in its mind. I do not believe

that either the language of that provision or the obvious intent of the parties can support such a conclusion.

The language of the agreement is, in my mind, clear and unambiguous. The pertinent portion provides: "If at the end of the franchise term of twenty years the premises are available and Licensee is determined in good standing by Licensor, Licensee *will be given* first consideration for an additional franchise period of five years, consistent with Licensor's rights and interests in the property." (Emphasis supplied.)

This is language prepared by the licensor and as such must be construed most favorably for the licensee and against the licensor and in accordance with the reasonable intentions of the parties. See, *Bishop Buffets, Inc. v. Westroads, Inc.*, 202 Neb. 171, 274 N.W.2d 530 (1979); *Gunset v. Mossman*, 196 Neb. 529, 243 N.W.2d 783 (1976).

It appears to me that the word "given" in paragraph 20, though not as artfully drawn as it might be, did intend to bestow upon licensee an absolute right, subject only to two conditions. The first condition is that the premises are available. And the second condition is that the licensee be in good standing. When those two conditions are met, then the licensee is to be given the "first right of refusal." The word "given" as used in paragraph 20 is a verb. Any definition of the word "given" as a verb implies to hand over or deliver to the person to whom the right is directed. See Webster's Third New International Dictionary, Unabridged, 959-60 (1968). It appears to make little sense to suggest that the parties would specifically enumerate two very basic requirements, the availability of a lease and the good standing of the licensee, as a prerequisite to a meaningless option vested solely in the licensor. It occurs to me that if the licensee was not in good standing as determined by the licensor, the licensor would not even bother to "mull over" the possibility of granting to the licensee an additional

franchise. Why then require, as a condition precedent to "giving first consideration," that the licensor determine the licensee to be in good standing? Good standing, under the terms of the agreement, required that the licensee do a host of things, all of which were intended for the benefit of the licensor and the licensor's business.

Here we have a situation in which the premises are available and the licensee has never been declared by the licensor not to be in good standing. Yet the licensor has determined that the licensee should not be granted an additional franchise. To suggest that a contract is drafted and consideration paid by the licensee to the licensor for that contract and all that the licensee gets in return for that is the courtesy of a thought, even though rendered in good faith, seems to me to ignore the realities of the business world and the obvious intent of the parties. Paragraph 20 as interpreted by the majority is rendered meaningless. I cannot believe that businesspersons enter into complicated business transactions for meaningless purposes. Apparently the trial court reached that same conclusion in compelling McDonald's to grant to the appellees an additional franchise. I agree with the action of the trial court and I would have affirmed its decision.

BRODKEY and WHITE, JJ., join in this dissent.