255 F.Supp.2d 920 (2003)
H & R BLOCK EASTERN TAX SERVICES, INC., Plaintiff,
v.
Leslie VORPAHL, Defendant.
No. 02-C-975.
United States District Court, E.D. Wisconsin.
March 14, 2003.
*931 George Burnett and Jodi L. Arndt, Liebmann Conway Olejniczak & Jerry, Green Bay, WI, for Plaintiff.
Aaron M. Krzewinski, Aaron M. Krzewinski, Attorney at Law, Oconto, WI, Vance M. Waggoner, Vance M. Waggoner, Attorney at Law, Oconto Falls, WI, for Defendant.

DECISION AND ORDER
GRIESBACH, District Judge.
Plaintiff filed this declaratory judgment action on October 2, 2002, seeking a declaration that the restrictive covenants contained in a franchise agreement entered into by both plaintiff and defendant are enforceable under Wisconsin law. More to the point, H & R Block wants to prevent Leslie Vorpahl from competing in the tax preparation market within 45 miles of his franchise territory of Oconto Falls, Wisconsin, for a period of one year, or recover damages from him for doing so. Plaintiff has now moved for partial summary judgment, seeking a declaration that the clauses at issue are enforceable under Wisconsin law. For the reasons stated herein, plaintiffs motion will be granted.

I. Background
Leslie Vorpahl and H & R Block commenced their franchise relationship in 1987. The terms of their relationship are set forth in a "Satellite Franchise Agreement" ("Agreement") entered into between the parties, two provisions of which (as discussed further below) prevent competition with H & R Block or its franchisees and restrict solicitation of former clients. (Arndt Aff., Ex. 1.) Both restrictions last for one year following the termination of the Agreement. The Agreement provided an exclusive license to Vorpahl to operate an H & R Block franchise in the territory of Oconto Falls, Wisconsin. In the late summer of 2002, Vorpahl informed H & R Block that he was terminating the Agreement effective December 31, 2002. (Arndt Aff., Ex. A, Response No. 4.) He also informed them that he intended to continue to prepare tax returns for franchise customers following the termination of the agreement. (Arndt Aff., Ex. A, Response No. 5.)
Soon after, H & R Block filed this declaratory judgment action seeking a declaration that the covenant not to compete and the non-solicitation clause are enforceable under Wisconsin law. In denying a *932 motion to dismiss, I previously ruled that the amount in controversy requirement was satisfied and that diversity jurisdiction existed. (Decision and Order, January 16, 2003, Docket # 33.) The parties have now fully briefed the motion for partial summary judgment, which I address herein.

II. Analysis
The parties are in agreement that Wisconsin law applies to the dispute in this case.[1] Accordingly, the first order of business is to determine which of the provisions in the Agreement might offend Wisconsin law.

1. Which Clauses are at Issue?
The clause at issue in the Agreement, section 12(a), reads:
(a) Franchisee covenants that: (i) during the term hereof he will not compete, directly or indirectly whether as an owner, stockholder, partner, officer, director or employee, with Block or Block franchisees in the business of preparing tax returns or performing Related Services in or within 45 miles of the Franchise Territory; in the franchise territory granted to any other Block franchisee; or within 45 miles of any office operated by Block; (ii) for a period of one year after the termination of this Agreement or the Transfer or other disposition of this franchise, he will not directly or indirectly, whether as an owner, stockholder, partner, officer, director or employee, solicit by mail, phone or in person, or divert from Block or Block franchisees any person for whom Franchisee prepared a tax return or performed Related Services or Additional Services at any time during the term of this Agreement for the purpose of rendering of services in connection with the preparation of tax returns or performance of Related Services or Additional Services; and (hi) for a period of one year after the termination of this Agreement or the transfer or other disposition of this franchise, he will not compete directly or indirectly, whether as an owner, stockholder, partner, officer, director or employee, with Block or Block franchisees in the business of preparing tax returns or performing Related Services or Additional Services in or within 45 miles of the Franchise Territory.
This agreement was terminated as of December 31, 2002. Thus, it appears that only clauses (ii) and (hi), which by their terms apply "for a period of one year after the termination of this Agreement" are presently at issue here. But Vorpahl takes what can only be described as an unusual position on this issue, suggesting that subsection (i) is also somehow implicated. That section quite clearly reads, "during the term hereof he will not compete... in or within 45 miles of the Franchise Territory, in the franchise territory granted to any other Block franchisee, or within 45 miles of any office operated by Block ..." (italics added). Since the term is now ended, Vorpahl having terminated *933 the relationship, that provision would not seem applicable.
Vorpahl suggests an alternative reading of the clause, however, arguing that it would not make sense to find that subsection (i) would apply during the term of the agreement. That is so, he argues, because otherwise he would have been in breach of the agreement the very moment he signed the contract, as his new franchise would then be "competing" with H & R Block franchises within 45 miles of Oconto Falls, of which there are about a dozen. Taking this a step further, the clause prevents competing "in ... the Franchise Territory" as well. Thus, Vorpahl suggests, clause (i) cannot apply during the term of the agreement because then Vorpahl would have been violating the agreement by his own act of opening the H & R Block franchise pursuant to the Agreement. Thus, he concludes, it must be read to apply after termination of the agreement.
Vorpahl makes this argument because if subsection (i) applies to the post-termination period, it effectively prevents Vorpahl from competing anywhere in the United States because there is presumably an H & R Block franchise within 45 miles of any location Vorpahl might chose. If Vorpahl's draconian interpretation of the contract were correct, the provisions could be struck down in their entirety under the analysis of Streiff v. American Family Ins. Co., 118 Wis.2d 602, 348 N.W.2d 505 (Wis.1984). But I need not belabor the argument, as it belies the plain language of the contract and defies logic. In short, subsection (i) applies only during the term of the agreement and simply prevents "competing" with H & R Block franchisees within 45 miles of such franchisees or within the franchise territory itself. Vorpahl would have us believe that becoming a franchisee of Block is somehow "competing" with Block. Clearly that cannot be the case, given the plain understanding of the term "compete". The most relevant definition given by Merriam Webster's Collegiate Dictionary for "compete" is "to be in a state of rivalry". (10th ed., 1999). How a franchisee could rival the franchisor by virtue of opening up the very franchise that both parties agree to is simply beyond understanding. Instead, a more logical reading of the clause is that, during the term of the Agreement, Vorpahl is prevented from opening up another tax preparation business that is not under the auspices of H & R Block. Thus, he cannot "compete" in that sense, but he can certainly operate the H & R Block franchise that both Block and Vorpahl agreed to. Thus, I find based on the plain language of section 12(a) that only subsections (ii) and (iii) are implicated here. Accordingly, the Agreement prohibits Vorpahl, for one year, from 1) soliciting any person for whom he prepared returns as an H & R Block franchisee, and 2) competing with Block or Block franchisees in or within 45 miles of the franchise territory.

2. Does the Common Law or Wis. Stat. § 103.465 Apply?
The next question to address is whether the franchise agreement is an employment agreement that would fall under Wis. Stat. § 103.465, which prohibits unreasonable restraints in employment contracts, or whether the common law analysis of restrictive covenants should be applied. The distinction can be important, as the statute would void an entire restrictive covenant even if only part of the restraint was unreasonable. In contrast, restraints governed by the common law analysis benefit from the rule of partial enforcement, such that a partially unreasonable restraint will be enforced to the extent it may be reasonable. See Reiman Assocs., Inc. v. R/A Advertising, Inc., 102 *934 Wis.2d 305, 306 N.W.2d 292 (Wis.Ct.App. 1981).
Wis. Stat. § 103.465 reads:
Restrictive covenants in employment contracts
A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.
Wis. Stat. § 103.465. Thus, the focused question here is whether a franchisee is "an assistant, servant or agent" for the purposes of Wis. Stat. § 103.465. Wisconsin courts have not addressed this matter, however, and the parties refer me to cases in other jurisdictions. For example, the Louisiana Court of Appeals found that a franchisee of the Kwik-Copy Corporation was not an employee of that franchise. In so finding, the court observed that while KwikKopy provided assistance and advice to the franchisee, it did not control the day-to-day operations of the business nor the right to hire and fire employees, keep the books or set other important business policies. See Sentilles v. Kwik-Kopy Corp., 652 So.2d 79, 82-83 (1995).
More on-point is a decision of the United States Court of Appeals for the Fifth Circuit. In Wilkinson v. Manpower, Inc., 531 F.2d 712 (5th Cir.1976), the Fifth Circuit applied Wisconsin law, and specifically Wis. Stat. § 103.465, finding that Wisconsin's statute dealt only with employment relationships, not franchise agreements. 531 F.2d at 717. The court found that there "is no apparent rationale for distinguishing a franchise from the sale of a business in this context." Id. Thus, the court analyzed a restrictive covenant under the common law of Wisconsin, finding it "indisputable" that a "two-year, sixcounty restriction" was reasonable under Wisconsin case law. Id.
Vorpahl relies on a Kansas case to the contrary result. In H & R Block, Inc. v. Lovelace, the Kansas Supreme Court considered the common law distinction between sales of a business and employment relationships as relevant to restrictive covenants. 208 Kan. 538, 493 P.2d 205 (1972). Noting the amount of control exercised over Lovelace's business by the franchisor, the court found that the relationship was more akin to an employment relationship and thus a strict construction in favor of the franchisee was warranted. Id. at 212. But that court explicitly held that the franchise agreement was "akin" to an employment agreement for the purposes of the common law analysis. Id. It did not apply Wisconsin's statute and did not have occasion to determine whether a franchisee would be an "assistant, servant, or agent" under Wis. Stat. § 103.465. As such, although the Kansas court's discussion may inform my analysis in other ways, it does not persuade me that Mr. Vorpahl was an "assistant, servant, or agent" of H & R Block.[2]
Thus, the only court to have construed Wis. Stat. § 103.465 in the franchise context *935 was the Fifth Circuit. I find its holding to be persuasive, and will therefore find that, under these facts, Mr. Vorpahl is not an assistant, servant or agent of H & R Block for the purposes of Wis. Stat. § 103.465. This finding is also consistent with the terms of the franchise agreement. Section 21 states that the parties "are not and shall not be construed as joint venturers, partners, agents or employees of each other." (Arndt Aff., Ex. 1.) Finally, I also note that the legislature, had it so desired, could easily have included franchisees within the text of the statute. As it has not, I will not seek to insert the term "franchisee" into the statute from the bench.

3. Reasonableness of the Restraints
It should go without saying that the inapplicability of Wis. Stat. § 103.465 will not leave franchisees like Vorpahl twisting slowly in the wind. The common law still maintains its distaste for restrictions on trade and burdens on the practice of one's chosen profession. Restrictive covenants must still be reasonable under the common law analysis, and reasonableness must be viewed in light of all of the circumstances. See Reiman v. R/A Advertising, Inc., 102 Wis.2d 305, 306 N.W.2d 292 (Wis.App.1981). In determining reasonableness, courts examine whether the restriction is reasonably necessary to protect the beneficiary, whether the time, space, purpose and scope are reasonable, and whether the public would be injured by the restriction's enforcement. Id.
Here no one argues that the public is somehow harmed by a one-year, 45-mile restriction on a tax preparer. Instead, Vorpahl's focus is on the scope of the restriction and the restriction's being necessary to protect H & R Block. But these arguments have been rendered futile by the discussion in Part 1 above. As recounted in that section, Vorpahl sought to paint the restrictions as nefariously as possible (so as to include subsection (i)), the upshot being that Vorpahl would be restricted from preparing taxes almost anywhere in the United States. Were that the case, then surely "the good must fall with the bad," as his brief suggests. (Def. Br. at 14.) But it is clear to me that subsection (i) does not restrain Vorpahl's activities now that the term of the Agreement is over, and Vorpahl is only restricted from competing within 45 miles of his franchise territory, and only prohibited from soliciting or competing for the term of one year. These are certainly reasonable restrictions, and I need not address them at length because Vorpahl has conceded the point. (Def. Br. at 14, "Even though paragraphs (ii) and (iii) may otherwise pass muster under Wisconsin law, they become unenforceable by being combined with paragraph (i).") Without being able to tie these restrictions to subsection (i), Vorpahl cannot demonstrate their unreasonableness. Accordingly, plaintiffs motion for summary judgment will be granted.
IT IS THEREFORE ORDERED that the plaintiffs motion for partial summary judgment is hereby GRANTED, and I find that the restrictive covenants contained in section 12(a)(ii) and 12(a)(iii) of the Satellite Franchise Agreement are reasonable under the circumstances, and are therefore valid and enforceable.
IT IS FURTHER ORDERED that a telephone scheduling conference will be held in this matter on April 4, 2003, at 9:45 a.m. The court will place the call. The parties are to notify the clerk of the telephone number where they can be reached for the conference prior to the abovescheduled matter.
NOTES
[1] There is a provision in the Agreement to the effect that Missouri law would apply unless the law or public policy of the state in which the franchisee is located would require its own law to be applied. As both parties discuss only Wisconsin law, however, this is sufficient to find that the parties have chosen Wisconsin law. See Aceros Prefabricados, S.A. v. TradeArbed, Inc., 282 F.3d 92, 97 (2d Cir. 2002) ("The parties' briefs assume that New York substantive law governs the issues of contract formation presented here, and such `implied consent ... is sufficient to establish choice of law.' ") (quoting Krumme v. West-Point Stevens Inc., 238 F.3d 133, 138 (2d Cir.2000) (quotation marks and citation omitted)); see also Consolidated Papers, Inc. v. Dorr-Oliver, Inc., 153 Wis.2d 589, 590 n. 1, 451 N.W.2d 456 ( Wis.Ct.App.1989).
[2] Vorpahl does not argue that he is an agent of H & R Block, but instead focuses on the employee argument, which presumably would fall into the statutory category of "assistant". Also, as discussed below, even if § 103.465 applied, I would find that the restrictions in the Agreement are "reasonably necessary for the protection of the employer or principal" under that statute.