H & R BLOCK TAX SERVICES, INC., A MISSOURI CORPORATION, APPELLANT, V. CIRCLE A ENTERPRISES, INC., A NEBRASKA CORPORATION, AND T. JOAN KELSEY, APPELLEES.

693 N.W.2d 548

Filed March 4, 2005.   No. S-03-750.

Larry R. Baumann and Neleigh N. Smith, of Kelley, Scritsmier & Byrne, P.C., for appellant.

George M. Zeilinger for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This is an appeal from a determination by the district court for Lincoln County that a covenant not to compete included in a franchise agreement between H & R Block Tax Services, Inc. (H & R Block), and Circle A Enterprises, Inc., was unenforceable as a matter of law.

## BACKGROUND

On April 2, 1985, T. Joan Kelsey and H & R Block entered into a satellite franchise agreement authorizing Kelsey to operate an H & R Block tax preparation business in Ogallala, Nebraska. On May 19, 1986, Kelsey assigned the agreement to Circle A Enterprises, a corporation of which she was the president. On the same date, Kelsey gave written notice of the assignment to H & R Block, expressly acknowledging that she remained personally liable for the performance of all terms of the franchise agreement.

The franchise agreement provided in relevant part:

**12. Limitations on Competition and Disclosure.**

(a) Franchisee covenants that: (i) during the term hereof he will not compete, directly or indirectly whether as an owner, stockholder, partner, officer, director or employee, with Block or Block franchisees in the business of preparing tax returns or performing Related Services in or within 45 miles of the Franchise Territory; in the franchise territory granted to any other Block franchisee; or within 45 miles of any office operated by Block; (ii) for a period of one year after the termination of this Agreement or the Transfer or other disposition of this franchise, he will not directly or indirectly, whether as an owner, stockholder, partner, officer, director or employee, solicit by mail, phone or in person, or divert from Block or Block franchisees any person for whom Franchisee prepared a tax return or performed Related Services or Additional Services at any time during

the term of this Agreement for the purpose of rendering of services in connection with the preparation of tax returns or performance of Related Services or Additional Services; and (iii) for a period of one year after the termination of this Agreement or the transfer or other disposition of this franchise, he will not compete directly or indirectly, whether as an owner, stockholder, partner, officer, director or employee, with Block or Block franchisees in the business of preparing tax returns or performing Related Services or Additional Services in or within 45 miles of the Franchise Territory.

(b) Franchisee further covenants that Franchisee will never (i) divulge to or use for the benefit of any person, association or corporation outside of the H&R Block organization, any information or knowledge concerning customers, the methods, promotion advertising or any other systems or methods of operation of Block's business or that of Block's franchisees which Franchisee may have acquired by virtue of his operations under this Agreement; (ii) use any materials regarding Additional Services without payment of the applicable royalty therefor and execution of an addendum regarding such Additional Services; or (iii) do any deliberate act prejudicial or injurious to the goodwill or name of Block. Information furnished to employees shall be reasonably limited to that which directly relates to such employee's duties and assists in the proper performance of such duties.

. . . .

(g) Franchisee will cause each individual employed to prepare tax returns or to supervise the preparation of tax returns to execute an agreement, in the form prescribed by Block, containing substantially the same covenants against competition and disclosure as are set forth in subparagraphs (a) and (b)(i).

The franchise was terminated in the fall of 1999, and Kelsey relocated to North Platte, Nebraska, which is more than 45 miles distant from Ogallala. Kelsey subsequently operated a tax preparation business in North Platte, and in the year 2000, prepared tax returns for a number of clients for whom she had prepared returns while operating the H & R Block franchise. Kelsey testified that she did not solicit these former clients but that if they initiated

contact with her, she prepared their returns. Her records indicate that over 85 percent of her receipts generated in 2000 came from former H & R Block clients.

On January 25, 2001, H & R Block filed this action in which it alleged that Circle A Enterprises and Kelsey breached the terms of the franchise agreement and prayed for damages and an accounting. In their joint answer and counterclaim, Circle A Enterprises and Kelsey alleged that the covenant not to compete set forth in the franchise agreement was "overbroad and unenforceable pursuant to the laws of the State of Nebraska." They denied any breach of the franchise agreement on their part and claimed damages for alleged breaches of the franchise agreement by H & R Block.

Following a bench trial, the district court issued a memorandum opinion and judgment on June 3, 2003. In its order, the court construed subparagraphs 12(a)(ii) and (iii) of the franchise agreement as one integrated covenant not to compete. Relying on *Polly v. Ray D. Hilderman & Co.*, 225 Neb. 662, 407 N.W.2d 751 (1987), the court concluded that the portion of the covenant that restricted Kelsey from preparing tax returns for any client within a 45-mile radius of Ogallala was unreasonable and unenforceable as a matter of law because it was not limited to former H & R Block clients with whom Kelsey actually did business and had personal contact. The district court concluded that although the portion of the covenant that restricted Kelsey from soliciting former H & R Block customers for a period of 1 year was reasonable, the invalid portion of the covenant rendered the entire covenant not to compete invalid and unenforceable. Based upon this determination, the court found that Kelsey could not have violated the provision in subparagraph 12(g) of the franchise agreement requiring her to have all employees sign noncompetition agreements. The court further determined that H & R Block failed to prove an alleged breach of subparagraph 12(b) of the franchise agreement. The court found, however, that H & R Block did prove that Circle A Enterprises and Kelsey breached the agreement by failing to turn over certain documents upon termination of the franchise agreement. However, the court held that H & R Block failed to prove any damages caused by this breach. Finally, the court found against Circle A Enterprises and Kelsey on the counterclaim.

H & R Block filed this timely appeal, which we moved to our docket on our own motion pursuant to our statutory authority to regulate the dockets of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

H & R Block assigns that the district court erred in (1) finding that the covenant not to compete was totally invalid and void and not severable into parts, (2) finding that the covenant not to compete could not extend to 45 miles in the tax preparation field for 1 year, and (3) determining that it was not a breach of the franchise agreement to fail to have employees sign a noncompetition agreement.

## STANDARD OF REVIEW

■ The interpretation of a contract involves a question of law, in connection with which an appellate court has an obligation to reach its conclusions independent of the determinations made by the court below. *Professional Bus. Servs. v. Rosno*, 268 Neb. 99, 680 N.W.2d 176 (2004); *Suburban Air Freight v. Aust*, 262 Neb. 908, 636 N.W.2d 629 (2001).

## ANALYSIS

### SEVERABILITY

In its first assignment of error, H & R Block asserts that the district court erred in failing to sever any unenforceable covenant not to compete from the remaining enforceable covenants. The district court expressly held that the covenant which prohibited Kelsey from soliciting or diverting H & R Block clients was valid and enforceable for a period of 1 year after termination of the franchise. The court reasoned, however, that because the covenant prohibiting Kelsey from preparing tax returns within 45 miles of Ogallala for a period of 1 year was unenforceable, the valid covenant was rendered invalid as a matter of law.

■ This court has long held that it is not the function of the courts to reform a covenant not to compete in order to make it enforceable. *CAE Vanguard, Inc. v. Newman*, 246 Neb. 334, 518 N.W.2d 652 (1994); *Brockley v. Lozier Corp.*, 241 Neb. 449, 488 N.W.2d 556 (1992); *Vlasin v. Len Johnson & Co.*, 235 Neb. 450, 455 N.W.2d 772 (1990); *Philip G. Johnson & Co. v. Salmen*,

211 Neb. 123, 317 N.W.2d 900 (1982). For example, in *CAE Vanguard, Inc. v. Newman*, 246 Neb. at 336, 518 N.W.2d at 654, the terms of a noncompetition agreement signed in conjunction with the sale of stock provided:

"[Defendant] agrees and covenants that he will not, for a period of five (5) years after the date of this Covenant, and anywhere in the United States, the continent of North America, or anywhere else on earth, or such lesser period of time or geographical area restriction as a court of law might later determine to be the limits of enforceability of this covenant, (a) directly or indirectly solicit electrochemical metalizing business regarding railroad axles and/or mounted wheel sets . . . ."

The district court reformed the agreement by employing the "blue-pencil" rule and striking the words " 'or anywhere else on earth, or such lesser period of time or geographical area restriction as a court of law might later determine to be the limits of enforceability of this covenant.' " *Id.* at 337, 518 N.W.2d 654. On appeal, we held that the covenant was not subject to reformation in this manner and that "we must either enforce it as written or not enforce it at all." *Id.* at 339, 518 N.W.2d at 656. We reached such conclusion even though the agreement provided that a court could reform the covenant, noting that "[p]rivate parties may not confer upon the court powers which it does not possess." *Id.*

In *Vlasin v. Len Johnson & Co.*, 235 Neb. at 451-52, 455 N.W.2d at 774, the covenant at issue restricted an employee from entering " 'into the insurance business within a fifty (50) mile radius of the City of Ogallala, Keith County, Nebraska, for a period of three (3) years from and after the date of the termination of this agreement.' " We found the covenant to be unreasonable and refused to reform it, noting that it is not the function of the courts to reform unreasonable covenants not to compete solely for the purpose of making them legally enforceable. See, also, *Philip G. Johnson & Co. v. Salmen, supra* (refusing to reform covenant restricting former partner for period of 3 years from soliciting or accepting work from any client or former client of partnership).

Our jurisprudence thus reflects a consistent refusal to strike or alter the language of an integrated covenant not to compete in order to make it enforceable. Although the covenant at issue in the

instant case is set forth in separate subparagraphs, we nevertheless agree with the district court that subparagraphs 12(a)(ii) and (iii) of the franchise agreement contain only one covenant not to compete, as both subparagraphs impose restrictions on the franchisee's posttermination competition. See *H & R Block Eastern Tax Services, Inc. v. Vorpahl*, 255 F. Supp. 2d 930 (E.D. Wis. 2003). Thus, if any portion of the covenant contained in subparagraphs 12(a)(ii) and (iii) is invalid, the remainder of the covenant is likewise invalid and unenforceable. See, *CAE Vanguard, Inc. v. Newman, supra*; *Brockley v. Lozier Corp., supra*; *Vlasin v. Len Johnson & Co., supra*; *Philip G. Johnson & Co. v. Salmen, supra*.

## NATURE OF TRANSACTION

In order to determine whether the covenant contained in subparagraphs 12(a)(ii) and (iii) is valid and enforceable, we must decide the primary issue in this appeal: Whether a covenant not to compete in a franchise agreement is more akin to a covenant not to compete in a sale of a business agreement or whether it is more akin to a covenant contained in an employment contract. This is an issue of first impression in this jurisdiction.

Regardless of the context, a partial restraint of trade such as a covenant not to compete must meet three general requirements to be valid. First, the restriction must be reasonable in the sense that it is not injurious to the public. *Polly v. Ray D. Hilderman & Co.*, 225 Neb. 662, 407 N.W.2d 751 (1987). See *Presto-X-Company v. Beller*, 253 Neb. 55, 568 N.W.2d 235 (1997). Second, the restriction must be reasonable in the sense that it is no greater than reasonably necessary to protect the employer in some legitimate business interest. *Polly v. Ray D. Hilderman & Co., supra*. Third, the restriction must be reasonable in the sense that it is not unduly harsh and oppressive on the party against whom it is asserted. *Id.* The only requirement at issue in the instant case is whether the restriction is no greater than reasonably necessary to protect H & R Block's legitimate business interest.

Nebraska courts are generally more willing to uphold promises to refrain from competition made in the context of the sale of goodwill as a business asset than those made in connection with contracts of employment. *Presto-X-Company v. Beller, supra*. The

rationale behind the differential treatment is that in a sale of a business, "[i]t is almost intolerable that a person should be permitted to obtain money from another upon solemn agreement not to compete for a reasonable period within a restricted area, and then use the funds thus obtained to do the very thing the contract prohibits." *Swingle & Co. v. Reynolds*, 140 Neb. 693, 695, 1 N.W.2d 307, 309 (1941).

■ In the context of the sale of a business,

> " '[T]he restraint of trade that is permissible . . . is no greater than is necessary to attain the desired purpose—the purpose of making good will a transferable asset. It is lawful for the seller to restrict his own freedom of trade only so far as is necessary to protect the buyer in the enjoyment of the good will for which he pays. The restraint on his own freedom must be reasonable in character and in extent of space and time.' "

*Presto-X-Company v. Beller*, 253 Neb. at 62, 568 N.W.2d at 239, quoting *Chambers-Dobson, Inc. v. Squier*, 238 Neb. 748, 472 N.W.2d 391 (1991), and 6A Arthur Linton Corbin, Corbin on Contracts § 1385 (1962). Thus, a covenant not to compete ancillary to the sale of a business must be reasonable in both space and time so that it will be no greater than necessary to achieve its legitimate purpose. *Presto-X-Company v. Beller, supra.* Whether such a covenant not to compete is reasonable with respect to its duration and scope is dependent upon the facts of each particular case. *Id.*

■ In the employment context, the validity of a covenant not to compete aimed at preventing a former employee from unfairly appropriating customer goodwill is no greater than reasonably necessary "only if it restricts the former employee from working for or soliciting the former employer's clients or accounts with whom the former employee actually did business and ha[d] personal contact." *Polly v. Ray D. Hilderman & Co.*, 225 Neb. at 668, 407 N.W.2d at 756. We have applied this test strictly. See *Professional Bus. Servs. v. Rosno*, 268 Neb. 99, 680 N.W.2d 176 (2004).

H & R Block urges us either to treat the franchise agreement as a sale of a business and apply the law applicable in that context or to create a new rule regarding the enforceability of covenants not to compete in franchise agreements. Circle A Enterprises and

Kelsey, however, urge us to analogize the franchise agreement to an employment contract and apply that body of law.

Decisions from other jurisdictions provide some guidance on this point. In *Jiffy Lube Intern., Inc. v. Weiss Bros., Inc.*, 834 F. Supp. 683 (D.N.J. 1993), the court held that covenants not to compete in a vehicle service franchise were more analogous to agreements ancillary to the sale of a business than to an employment agreement. The court reasoned that a franchisor and a franchisee are in a more equitable bargaining situation than would be found in a typical employer-employee relationship. In addition, it emphasized that the primary characteristic of a franchise is the license given to the franchisee "to trade upon and exploit the franchisor's good will." *Id.* at 691. The court reasoned that when the franchise is terminated, the goodwill is in some sense returned to the franchisor and that thus, a "reasonably crafted" restrictive covenant is necessary to protect the goodwill after its return. *Id.*

In *McCart v. H & R Block, Inc.*, 470 N.E.2d 756 (Ind. App. 1984), the court held that a tax preparation service franchise very similar to that at issue in the instant case was akin to the sale of a business for purposes of determining whether the franchisor had a protectible interest which justified the use of a covenant not to compete. The court compared the customer affiliation associated with H & R Block's service mark to the goodwill inherent in the sale of a business. The court noted that the franchisee paid for the value of the mark in order to draw upon H & R Block's reputation and attract customers. Because the bargain for use of the mark was a bargain for customers who would be attracted to it, the court found that it was analogous to the goodwill involved in a sale of a business. Based on this analysis, the court concluded that a covenant restricting the franchisee from competition for 2 years within a 50-mile radius was reasonable and enforceable.

A different rationale was applied by the Supreme Court of Kansas in *H & R Block, Inc. v. Lovelace*, 208 Kan. 538, 493 P.2d 205 (1972), another case involving an H & R Block franchise. In *Lovelace*, the court reasoned:

> The agreement before us is neither a contract of employment nor one for sale of a business, but rather that which in the modern business world has now come to be known as a franchise. . . .

   . . . Suffice it to say under the contract here defendant operated under plaintiff's name in providing a service in which enterprise plaintiff retained a considerable amount of operational control including the prescribing of office hours, fees to be charged, methods and forms to be used, accounting periods, advertising and promotion and training of personnel, and upon breach of the contract by defendant, title to and possession of books, records, files and client lists vested in plaintiff.

   Under these narrow facts we are inclined to the view the contract is more akin to one of employment than to a contract for sale or disposition of a business and sufficiently of that character to make strict construction against the promisee appropriate.

208 Kan. at 545-46, 493 P.2d at 211-12. The court thereafter held that a covenant prohibiting competition anywhere for a period of 5 years was unenforceable because of its unreasonable territorial extent.

  A Wisconsin federal court recently addressed the enforceability of a covenant not to compete identical to the one before us now. In *H & R Block Eastern Tax Services, Inc. v. Vorpahl*, 255 F. Supp. 2d 930 (E.D. Wis. 2003), the court did not expressly decide whether the franchise agreement was more analogous to a sale of a business or an employment agreement. Nevertheless, after examining the time, space, purpose, and scope of the restrictions, it determined that the posttermination restrictions on competitive activity were reasonable. This approach is similar to the analysis which this court employs in determining the validity of a restrictive covenant in the context of the sale of a business.

  In the instant case, there is evidence that H & R Block provides various goods and services to its franchisees, including training, national and local advertising, copiers, paper, and tax forms. H & R Block's training program generally begins around Labor Day and runs through the beginning of December, with classes held twice a week for 3 hours at a time. In addition, H & R Block offers upper-level tax courses, including training which enables individuals to receive Internal Revenue Service certification. H & R Block provides an annual update on tax changes and material to all franchisees for use in training their employees. Upon

franchise termination, the franchisee is required to return all items provided by H & R Block and copies of all customer tax returns and customer lists.

Although the record indicates that H & R Block retained significant control over its franchisees, it is equally clear that the main purpose of obtaining a franchise from H & R Block is to trade on the reputation and goodwill of its service mark and thereby acquire customers. Based on the evidence and our interpretation of the applicable law, we conclude that the franchise agreement in this case is analogous to a sale of a business for purposes of determining the enforceability of the posttermination covenant not to compete. We therefore apply the analysis outlined in *Presto-X-Company v. Beller*, 253 Neb. 55, 568 N.W.2d 235 (1997), to determine whether the covenant is enforceable.

## ENFORCEABILITY

There is no claim or evidence in this case that the covenant is injurious to the public interest. See, *Presto-X-Company v. Beller, supra*; *Swingle & Co. v. Reynolds*, 140 Neb. 693, 1 N.W.2d 307 (1941). We therefore focus on the issue of whether the covenant is reasonable in both space and time so that the restraint imposed will be no greater than necessary to achieve its legitimate purpose. See, *Presto-X-Company v. Beller, supra*; *D. W. Trowbridge Ford, Inc. v. Galyen*, 200 Neb. 103, 262 N.W.2d 442 (1978).

The district court determined from the evidence at trial that "the duration of the covenant not to compete and the geographic limitation of 45 miles from Ogallala, Nebraska are reasonable." We agree. The franchise district manager for H & R Block testified that the 45-mile scope of the covenant was reasonably necessary to protect the integrity of H & R Block's service mark and its customer relationships. While there is evidence of other tax return preparers located within a 45-mile radius of Ogallala, there is no showing that any of them had prior access to the mark and materials incident to an H & R Block franchise. Generally, income tax returns are prepared annually, and thus the 1-year restraint simply limits the former franchisee from soliciting former H & R Block clients within the restricted area for one tax season. The record establishes that a 1-year restriction is reasonably necessary to protect the franchisor's goodwill in its tax

preparation business. See, also, *H & R Block Eastern Tax Services, Inc. v. Vorpahl*, 255 F. Supp. 2d 930 (E.D. Wis. 2003) (determining that 1-year/45-mile scope of covenant not to compete in franchise agreement was reasonable).

Relying on *Polly v. Ray D. Hilderman & Co.*, 225 Neb. 662, 407 N.W.2d 751 (1987), and *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29 (1986), the district court reasoned that the covenant not to compete in subparagraph 12(a)(iii) was unenforceable because it was not "customer specific" and instead prohibited any competitive activity within 45 miles of Ogallala for 1 year after termination of the franchise. *Polly* and *Boisen* involved covenants not to compete set forth in employment contracts. Because we conclude that this franchise agreement is akin to a sale of a business, the "customer specific" rule articulated in those cases is not applicable. Instead, in the case of a covenant not to compete ancillary to the sale of a business, a restraint is enforceable if it is reasonable in both time and scope. See *Presto-X-Company v. Beller, supra.* Applying that rule to this case and for the reasons set forth above, we conclude that the covenant not to compete set forth in subparagraphs 12(a)(ii) and (iii) of the franchise agreement is reasonable and enforceable.

## CONCLUSION

For the foregoing reasons, we conclude that the district court erred in finding the covenant not to compete contained in subparagraphs 12(a)(ii) and (iii) of the franchise agreement to be unenforceable as a matter of law. Although the district court conducted a full evidentiary hearing, its final judgment was based entirely on its determination of unenforceability. It therefore made no factual findings as to whether the covenant was violated based on the evidence presented. In view of our independent determination that the covenant is enforceable, it becomes necessary to determine whether Kelsey's actions violated the covenant and, if so, the consequences of the violation. Also, it must be determined whether Kelsey violated subparagraph 12(g) of the franchise agreement by failing to obtain noncompete agreements from her employees. These factual determinations should be made by the district court, and we therefore reverse the

judgment and remand the cause to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

WRIGHT, J., dissenting.

I respectfully dissent from the majority opinion which concludes that the covenant not to compete should be treated as if it were part of a contract for the sale of a business and that the district court erred in finding the covenant to be unenforceable.

We have previously addressed covenants not to compete in both contracts for the sale of a business and employment contracts. Nebraska courts are generally more willing to uphold promises to refrain from competition made in the context of the sale of goodwill as a business asset than they are to honor those promises made in contracts of employment. See *Presto-X-Company v. Beller*, 253 Neb. 55, 568 N.W.2d 235 (1997). The rationale is that a seller who obtains money from a buyer as consideration for a covenant not to compete should not be permitted to use that money to compete with the buyer. However, a covenant not to compete ancillary to the sale of a business must be reasonable in both space and time so that it will be no greater than reasonably necessary to achieve its legitimate purpose. *Id.* The purpose of the restriction is to protect the buyer in the enjoyment of the goodwill which he has purchased in the sale of the business.

In the case of an employer-employee relationship, a covenant not to compete will be enforced only if it restricts a former employee from working for or soliciting the former employer's clients or accounts with whom the employee actually did business and had personal contact. See *Polly v. Ray D. Hilderman & Co.*, 225 Neb. 662, 407 N.W.2d 751 (1987).

Here, the covenant not to compete was contained within a franchise agreement. Neb. Rev. Stat. § 87-402(1)(a) (Reissue 1999) of the Franchise Practices Act defines a franchise as

> a written arrangement for a definite or indefinite period, in which a person grants to another person for a franchise fee a license to use a trade name, trademark, service mark, or related characteristics and in which there is a community of

interest in the marketing of goods or services at wholesale or retail or by lease, agreement, or otherwise.

The franchise agreement at issue authorized Kelsey to offer tax preparation services under H & R Block's trade name. H & R Block, however, retained considerable control, including the right to determine office hours and fees and the right to dictate which forms would be used. Upon termination of the agreement, Kelsey was required to return all client lists and copies of client tax returns to H & R Block. Kelsey paid H & R Block for the use of its trade name, but such payment did not carry with it any expectation of ownership that would accompany the sale of a business. See, *McDonald's Corp. v. Markim, Inc.*, 209 Neb. 49, 306 N.W.2d 158 (1981); *Midlands Transp. Co. v. Apple Lines, Inc.*, 188 Neb. 435, 197 N.W.2d 646 (1972).

The district court determined that the covenant not to compete which prohibited Kelsey from preparing tax returns within a 45-mile radius of Ogallala, Nebraska, was unreasonable, ineffective, unenforceable, and therefore void. The rationale for the court's determination was that a covenant not to compete must not be greater than is reasonably necessary to protect an employer against a former employee's improper and unfair competition, and cannot restrict the former employee from engaging in ordinary competition with his previous employer. See, *Vlasin v. Len Johnson & Co.*, 235 Neb. 450, 455 N.W.2d 772 (1990); *Polly v. Ray D. Hilderman & Co., supra.* The evidence established that there were a significant number of bookkeepers and tax return preparers in competition with H & R Block within a 45-mile radius of Ogallala. Under these circumstances, the court concluded that enforcing the covenant would result in restricting Kelsey from engaging in ordinary competition with H & R Block.

The question presented is whether the covenant not to compete in the franchise agreement between Kelsey and H & R Block is more similar to a covenant not to compete concerning the sale of a business or one entered into in the context of an employer-employee relationship.

When a business is sold, the sales agreement may contain a covenant not to compete if goodwill is a business asset purchased by the buyer. In that situation, the seller agrees not to compete with the buyer and the restraint of trade can be no greater than is

reasonably necessary to obtain the desired result of making goodwill a transferable asset. The restriction upon the seller is only that which is reasonably necessary to protect the buyer's enjoyment of the goodwill purchased. See *Presto-X-Company v. Beller*, 253 Neb. 55, 568 N.W.2d 235 (1997).

When a covenant not to compete is part of a franchise agreement, the situation is quite different. The franchisor may require the franchisee to pay for use of a trade name, and the franchisor may retain considerable control over operation of the business. Upon termination of the franchise, the franchisee is in most instances left with nothing while the franchisor retains the goodwill, the name of the business, and all records and client lists.

A case which illustrates the difference is *H & R Block, Inc. v. Lovelace*, 208 Kan. 538, 493 P.2d 205 (1972). H & R Block sought to restrain the defendant from violating a covenant not to compete upon the termination of a franchise agreement. The court made a distinction between covenants contained in employer-employee contracts and covenants relating to the sale of a business. It pointed out that the agreement at issue was neither a contract of employment nor one for the sale of a business, but, instead, was what has now come to be known as a franchise. The court concluded that under the facts presented, the contract was more like an employment agreement than a contract for the sale of a business.

In concluding that the franchise agreement at issue should be considered analogous to the sale of a business for the purpose of determining enforceability of the covenant not to compete, the majority relies upon *Jiffy Lube Intern., Inc. v. Weiss Bros., Inc.*, 834 F. Supp. 683 (D.N.J. 1993), and *McCart v. H & R Block, Inc.*, 470 N.E.2d 756 (Ind. App. 1984). In *Jiffy Lube Intern., Inc.*, the court reasoned that upon termination of the franchise, the goodwill was in some sense returned to the franchisor and that, therefore, a reasonably crafted restrictive covenant was necessary to protect the goodwill after its return. I agree that the goodwill is returned, but that does not permit a covenant which will restrict ordinary competition or one that is greater than reasonably necessary. In *McCart*, the court compared customer affiliation associated with H & R Block's service mark to the goodwill inherent in the sale of a business. H & R Block's protectable interest

was the customer recognition of its service mark and the year-to-year affiliation those customers developed with a particular H & R Block office. The court concluded that H & R Block had a protectable interest in its customer affiliation but that it had no right to restrict competition beyond the limits of its protectable interest.

In my opinion, a franchise agreement is akin to an employment contract. The franchisor retains the goodwill and the name of the business. At the end of the agreement, the franchisee, like the employee in an employer-employee relationship, has nothing remaining. Unlike the seller of a business, the franchisor is not paid for a covenant not to compete. The franchisor exercises control and dictates business policies, which is like the role of an employer in an employer-employee relationship. In such an arrangement, a covenant aimed at preventing the unfair appropriation of customer goodwill can be no greater than reasonably necessary to protect the franchisor. It can restrict the franchisee only from working for or soliciting the franchisor's customers or accounts with whom the franchisee actually did business and had personal contact.

Here, the covenant prohibits Kelsey from engaging in ordinary competition with H & R Block within 45 miles of its Ogallala office for a period of 1 year. In my opinion, the district court correctly determined that the covenant was unenforceable as a matter of law because it was not limited to former H & R Block clients with whom Kelsey actually did business and had personal contact.

For these reasons, I would affirm the district court's judgment finding that the covenant not to compete was overly broad and therefore unenforceable.

CONNOLLY, J., joins in this dissent.